GEORGE F. TOLLE v. ERNST CORRETH.

Where the petition for a writ of error substantially complies with the statute, and the bond conforms to the law, a motion to dismiss will not be sustained. (Paschal's Dig., Art. 1495, Note 587.)

The colonization law of Texas and the statutes of the state recognize the right to use water for irrigation purposes. (Paschal's Dig., Arts. 574, 584, 4523, 3945–3952.)

Where the defendant owned the land upon which there was a spring he had the right to use the water for the purposes of irrigation, provided he restored it back to its natural channel before it reached the lands of the adjoining proprietor, and if the stream was thus weakened so as to damage the adjoining proprietor, the defendant was not liable for such damage.

APPEAL from Comal. The case was tried before Hon. GEORGE H. NOONAN, one of the district judges.

The trial was for damages for obstructing a water-course, or, rather, using it for irrigation purposes, so as to weaken the stream before it reached the land of the plaintiff. The defendant pleaded that he owned the stream, and had the right thus to use the water. The verdict was for the defendant, and the only question considered was the right of the plaintiff to use the water for irrigating purposes.

No brief for the appellant has been furnished to the *Reporter*.

*Chandler & Carleton*, for appellee.

MORRILL, C. J.—A motion is made in this case by the defendant in error to dismiss the writ of error, because: 1st. The petition for the writ of error is defective; and, 2d. There is no legal bond.

There is nothing in the statutes defining the requisitions of a petition for writ of error except what is to be inferred from the duties imposed on the clerk where it shall have been filed.

The petition in this case gives the name and residence of the opposite party, the county in which the judgment was obtained, the term of the court, the number of the cause on the docket, and the judgment, asserts the error, and requests a citation to issue to the defendant in error to appear before the Supreme Court at Austin at its next term and defend said writ, &c.

The bond is in strict compliance with article 1517. [Paschal's Dig.]

It is doubtful whether there is a cause in court more free from criticism as to the subjects complained of than this.

The motion is refused.

The question for adjudication is, whether a proprietor of a tract of land in which originates a spring forming a stream, running in a channel through his land and into the land of another person, has a right to divert the stream from the natural channel, and cause it to overflow and irrigate the land, provided the stream resumes its original channel before it enters the land of the adjacent proprietor?

Though there has been a multiplicity of decisions relative to riparian proprietors, and volumes devoted exclusively to water-courses, yet it is believed that the land

system of Texas, as handed down from the parent country, presents a new point. The books are full of decisions upon controversies relating to the uses of water-courses for manufacturing purposes, but the cause before the court relates to agriculture.

The colonization law of Coahuila and Texas, of the 24th March, 1825, contemplated that the colonists would be stock-raisers and small farmers. The Mexican Government also knew, it is presumed, the importance or rather the necessity of irrigation for agricultural purposes, especially in the western portion of the province. Accordingly we find it decreed, in article 574, [Paschal's Dig.,] that "observing the distinction to be made in distributing lands between grazing lands, or those suitable for raising stock, and irrigable tillage land, and that which is not irrigable, this law shall grant to the contractor or contractors for forming new settlements five sitios of grazing land and five labors, of which at least one-half shall be land not irrigable, for every hundred families they shall introduce and establish in the state."

The land law of the state of 1837, article 4523, [Paschal's Dig.,] in pointing out the duties of surveyors, says: "He shall also state, to the best of his knowledge or belief, the the number of labors of irrigable lands, the number of labors of temporal or arable lands, and the number of labors of pasture lands in each survey."

The amount to be paid was regulated by the colonization law, article 584, [Paschal's Dig.] "The new settlers shall pay to the state, as acknowledgment for each sitio of grazing land, $30; for each labor, not irrigable, $2 50; and for each that is irrigable, $3 50."

The act of February 10, 1852, articles 3945 to 3952, [Paschal's Dig.,] concerning irrigation property, shows that the legislature regarded the irrigation of lands as of primary importance, and intended to carry out the principles of the Mexican laws.

Water was valuable for stock-raising and agriculture, and the fact that lands were valuable in the ratio of their irrigable qualities, and that the irrigable lands were not subject to a monopoly, is conclusive that the government, in granting the lands, granted the irrigable rights and privileges thereof.

We historically know that the lands in the western portion of the state are comparatively in some seasons useless for agricultural purposes unless they are irrigated. Indeed, the very fact that the defendant in this suit used the stream for irrigation shows the necessity of it.

The pleadings show that plaintiff had a mill on his land, and that in dry seasons the water was used by defendant to such an extent as to prove injurious to plaintiff's machinery. There is no allegation that defendant wantonly or maliciously made use of the stream, or that he used more than was necessary for agricultural purposes. This he had a legal right to do. Plaintiff is presumed to know that whoever owned the land above and adjoining his land had a right to use the water running through it and on it for irrigating the land, and when he erected his mill he did not and could not lessen the defendant's vested rights, and whatever damage he may sustain is *"damnum absque injuria."*

In the case of Rhodes v. Whitehead, 27 Tex., 310, Chief Justice Moore, in delivering the opinion of the court, said: "It may be admitted that the purpose of irrigation is one of the natural uses, such as thirst of people and cattle and household purposes, which must absolutely be supplied; the appropriation of the water for this purpose would therefore afford no ground of complaint by the lower proprietors if it were entirely consumed."

The authorities cited from the distinguished courts of New York, Massachusetts, and England are founded on the principle or maxim, "The water runs, and let it run." "Every one has a right to have the advantage of a flow of

water in his land without diminution or alteration." A moment's reflection will enable any one to see the propriety of these maxims where water is useful only in its flow, and as subservient to mechanical or manufacturing purposes. But in a country or state where water is useful for agricultural purposes, and where the sovereign power grants, for a nominal consideration, water for the purposes of irrigation, these maxims do not apply; instead thereof we must substitute, "water irrigates, and let it irrigate."

A great many side issues were made in this case, which did not properly arise, and therefore will receive no further notice.

We would not be understood as deciding to what extent a stream can be used for irrigating purposes. The relative rights or exclusive rights are not before us.

JUDGMENT AFFIRMED.