## Watkins Land Company et al. v. E. Clements.

### No. 1407. Decided April 23, 1905.

**1.—Judgment—Injunction—Description—Certainty.**

A judgment enjoining the use of water from a stream to irrigate undefined parts of a number of surveys is too indefinite for enforcement. (P. 584.

**2.—Irrigation—Injunction—Parties.**

The rights of persons not parties to the suit to be furnished with water for irrigating their lands can not be concluded by an injunction against the proprietor of the irrigation plant furnishing it, and it was error to award such injunction. (P. 584.)

**3.—Irrigation—Prescription.**

A right to appropriate the waters of a stream for irrigation to the exclusion of the irrigation rights of other riparian owners may be acquired by limitation. Baker v. Brown, 55 Texas, 377. (P. 584.)

**4.—Same.**

Defendants could not show title by limitation to appropriate one-half the waters of a certain spring, as against the riparian rights of plaintiff, where, the use under which such prescription was claimed originating with M., his rights and lands had been acquired by plaintiff, who in conveying same to defendants, had expressly provided that such conveyance should not affect plaintiff's rights as riparian owner. (Pp. 584, 585.)

**5.—Irrigation—Riparian Owner.**

Riparian rights of a land owner can not extend beyond the limits of the original survey as granted by the government. The right is restricted to land the title to which is acquired by one transaction. (P. 585.)

**6.—Same—Land Beyond Watershed.**

The riparian proprietor can not ordinarily divert water to land lying beyond the watershed of the stream. (P. 585.)

**7.—Water—Natural Use—Irrigation.**

The right to use the water of a stream for natural purposes (domestic uses and the support of animal life) distinguished from the use for irrigation. The latter use must be a reasonable one, considering all the circumstances and conditions under which it is made; and the courts have power to determine the relative rights of riparian owners and regulate their use of the water. (Pp. 585, 586.)

**8.—Same—Arid Region.**

The rule that the use of water for irrigation must be a reasonable one with reference to the rights of other proprietors applies, though the lands in question. lie within the arid regions of Texas, and irrigation does not become a natural use within such limits. (Pp. 586-589.)

**9.—Same—Cases Discussed.**

Rhodes v. Whitehead, 27 Texas, 304; Tolle v. Correth, 31 Texas, 362; Barrett v. Metcalf, 33 S. W. Rep., 758; Baker v. Brown, 55 Texas, 377; Mud Creek Irrigation Co. v. Vivian, 74 Texas, 170, discussed and limited. (Pp. 586-589.)

**10.—Irrigation Rights of Riparian Owner.**

Riparian owners held not to have the right to apply all the water of the stream to their riparian lands, but only to make reasonable use of it in common with others; nor as against other riparian owners, to appropriate any of the water to non-riparian land which they might own, though it adjoined land owned by them which was entitled to the use of the water, nor sell water to others to irrigate lands not riparian. (P. 589.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Reeves County.

Clements sued the Watkins Land Company and others to restrain them from diverting the waters of Toyah Creek for purposes of irrigation, to the prejudice of the irrigation rights of plaintiff. Upon findings of fact and law, without a jury, the trial court rendered a judgment for defendants, from which plaintiff appealed. The Court of Civil Appeals reversed and rendered judgment in his favor, and the appellees obtained writ of error.

*T. J. Hefner, A. C. Mitchell,* and *Edwards & Edwards,* for plaintiffs in error.—Lands are riparian when they abut on or are traversed by a natural water course with well defined channel, banks and bed; and the extent of the riparian rights of such lands is limited by the boundaries of the original surveys in which they lie. Gould on Waters, 3 ed., sec. 148; Kinney on Irr., secs. 43, 57, 58; Long on Irr., secs. 13, 14; 2 Bouviers Law Dict. (Rawle's Revision), 231; Boehmer v. Big Rock Irr. Dist. (Cal.), 48 Pac. Rep., 908; Lux v. Haggin, 10 Pac. (Cal.) Rep., 756-773; Crawford v. Hall (Neb.), 60 Law. Rep. Ann., 902; Green v. Carotto, 13 Pac. Rep. (Cal.), 685; Morrissey v. Chicago B. & Q. Ry. Co., 56 N. W. Rep. (Neb.), 946.

Where original surveys are traversed by or abut on a stream, the extent of the riparian right to irrigate them is not limited to the area which drains directly into and feeds said stream. Jones v. Conn, 64 Pac. Rep. (Ore.), 855.

The rule of reasonable use of waters of a stream for irrigation purposes does not apply to lands within the arid districts of Texas, but irrigation within such districts is a natural use and the upper riparian owner has the right to exhaust all the water in the stream, if necessary, for the irrigation of his lands riparian to said stream. Rhodes v. Whitehead, 27 Texas, 304; Tolle v. Correth, 31 Texas, 362; Barrett v. Metcalfe, 12 Texas Civ. App., 253; Baker v. Brown, 55 Texas, 377; Mud Creek Irrigation, etc., Co. v. Vivian, 74 Texas, 170; McGhee Irr. D. Co. v. Hudson, 85 Texas, 587; Muller v. Landa, 31 Texas, 271; Cornick v. Arthur, 73 S. W. Rep., 410.

The appellees had acquired the right to appropriate all the water of the head springs of Toyah Creek, as against appellant, by appropriation and user, for more than ten years before the institution of this suit. Water is land. McGhee Irr. D. Co. v. Hudson, 85 Texas, 587; 17 Am. and Eng. Enc. of Law, p. 514; Toyah Creek Irr. Co. v. Hutchins, 21 Texas Civ. App., 274. Appellate court will look to statement of facts where there is no finding on an issue. Ikard v. Thompson, 81 Texas, 293; Goode v. Lowery, 70 Texas, 150. On limitation: Hall v. Carter, 77 S. W. Rep., 20; Baker v. Brown, 55 Texas, 377, 381; Haas v. Choussard, 17 Texas, 588; Mud Creek Irr., etc., Co. v. Vivian, 74 Texas, 170; Authers v. Bryant, 38 Pac. Rep., 439; Long on Irr., p. 12; Gould on

Waters, secs. 334, 337; 17 Am. and Eng. Enc. of Law, pp. 518, 519; Salem Mill Co. v. Lord, 69 Pac. Rep. (Ore.), 1033; Vernon Irr. Co. v. City of Los Angeles, 39 Pac. Rep., 762; Crawford v. Hall, 60 Law. Rep. Ann., 909; Bathgate v. Irvine, 58 Pac. Rep., 442; Hargrave v. Cook, 41 Pac. Rep. (Cal.), 18; Hesperia Ld. & W. Co. v. Rogers, 83 Cal., 103.

Conceding that the doctrine of reasonable use applies to the use of water for irrigation purposes in Texas, the trial court's judgment for appellees should be sustained, for the reason that the court found that only a portion of the appellant's lands were riparian and that he had at all times sufficient water to irrigate such riparian lands.

The owner of land upon which is located a head spring, within the arid district of Texas, has the right to use all the water of such spring for irrigation for agricultural purposes.

A lower riparian owner is not entitled to injunction simply because an upper riparian owner diverts the water, but he must show substantial damage by the diversion to entitle him to an injunction restraining the waste of the water.    Tolle v. Correth, 31 Texas, 362; Jones v. Conn, 64 Pac. Rep., 855; Elliot v. Railway Co., 10 Cushing, 191; Fifield v. Water Works, 62 Pac. Rep. (Cal.), 1054; Crawford v. Hall, 60 Law. Rep. Ann. (Neb.), 902; Heilbron v. Land & W. Co., 22 Pac. Rep. (Cal.), 62; Hargrave v. Cook, 41 Pac. Rep. (Cal.), 18; Modock Land & L. Co. v. Booth, 36 Pac. Rep. (Cal.), 431.

An upper riparian owner can, by prescription or limitation, acquire the right to divert water to nonriparian lands as against a lower riparian owner.

A lower riparian owner can not claim estoppel against an upper riparian owner, because the upper riparian owner has permitted him to take water below from a stream and erect permanent improvements for the use and enjoyment of the water.    Scarbrough v. Allcorn, 74 Texas, 359; Texas Banking & Ins. Co. v. Hutchins, 53 Texas, 61; Bathgate v. Irvine, 58 Pac. Rep., 442; 8 Enc. Pleading and Practice, p. 9.

If it is admitted that this case should have been reversed by the Court of Civil Appeals, the Court of Civil Appeals erred in rendering judgment against the plaintiffs in error, because the judgment restrains plaintiffs in error from applying the water to undefined portions of certain surveys, based upon the finding of the court below as to the watershed of such survey.    Rev. Stats., art. 1027; Freeman on Judg., 4 ed., par. 22; St. Louis A. & T. Ry. Co. v. Henderson, 86 Texas, 307; Ablowich v. Greenville Nat. Bank, 95 Texas, 429; Stevens v. Masterson, 90 Texas, 417; Underwood v. Jones, 65 S. W. Rep., 481; Kuhlman v. Medlinka, 29 Texas, 385; Miller v. Moss, 65 Texas, 179; Miller v. Moss, 9 S. W. Rep., 257; San Antonio & A. P. Ry. Co. v. Addison, 96 Texas, 61; Hanaford v. Morton, 22 Texas Civ. App., 590; Hurst v. Benson, 71 S. W. Rep., 417.

The judgment of the Court of Civil Appeals is erroneous because it enjoins plaintiffs in error from supplying any water to irrigate partic-

ular lands not owned or claimed by any parties to this suit, and in possession of persons who are not parties to the suit.

*J. E. Starley* and *R. W. Flournoy,* for defendant in error.—Lands are riparian to a stream when lying in original surveys naturally traversed or watered by such stream and lying within the watershed of said stream, that is within an area the waters of which drain directly into and feed said stream; and as such, riparian lands are entitled to a reasonable use of the waters of such stream for irrigation purposes. Boehmer v. Big Rock Irr. Dist., 48 Pac. Rep., 908; Lux v. Haggin, 10 Pac. Rep., 756, 773; Bathgate v. Irvine, 58 Pac. Rep., 444; Chauvet v. Hill, 28 Pac. Rep., 1066.

That the definition of riparian should be restricted where the lands are extensive and water supply limited is held in Jones v. Conn, 64 Pac. Rep., 855; Salem Mill Co. v. Lord, 69 Pac. Rep., 1033.

The test of the riparian character of these lands is not alone their situation as to frontage or contiguity to the stream according to the original surveys, but also their relation to the immediate drainage area and watershed of such stream. Same authorities.

The use of water for irrigation purposes on lands of different ownerships and riparian to the same stream, should be limited and apportioned so as to afford a reasonable use of the waters of such stream to all such riparian lands, the reasonableness of such use to be tested by the quantity and nature of the lands entitled to water for such use, and by the water supply. 17 Am. and Eng. Enc. of Law, 492; Gould on Waters, secs. 205, 217; Fleming v. Davis, 37 Texas, 193; Lux v. Haggin, 10 Pac. Rep., 755, 763; Jones v. Conn, 64 Pac. Rep., 855; Bathgate v. Irvin, 58 Pac. Rep., 442; Mayor, etc., of City of Baltimore v. Appold, 42 Md., 457; Elliott v. Fitchburg Ry. Co. (Mass.), 10 Cush., 191; Union Mill & M. Co. v. Ferris, 2 Sawyer (U. S.), 176; Gillett v. Johnson, 30 Conn., 180; Low v. Schaffer, 33 Pac. Rep., 680; Salem Mill Co. v. Lord, 69 Pac. Rep., 1033; Crawford Co. v. Hall, 60 Law. Rep. Ann., 889; Meng v. Coffey, 60 Law. Rep. Ann., 910.

It is the right of every riparian owner to have the waters of a natural stream on his lands to flow in their natural channel down to his lands from above as they have been accustomed to flow, subject only to the rights of upper riparian owners on said stream to appropriate so much of the waters of same for irrigation purposes and domestic uses as may be lawfully applied to such purposes, and an unlawful diversion or waste of water by such upper riparian owners should be enjoined in favor of such lower riparian owners.

It is the duty of every upper riparian owner to return to the channel of the stream, by safe and adequate appliances, above the lands of a lower riparian owner, all waste waters which may have been taken by the upper riparian owner for irrigation purposes and not absorbed or used upon his lands entitled to such water.

An upper riparian owner has no right, as against a lower riparian.

owner, to divert to nonriparian lands, to be there used, the water which he has a right to use, and does not use, on riparian lands. On plaintiffs right to flow of creek, to extent of water not lawfully used above: Long on Irrigation, sec. 16; Armendiaz v. Stillman, 67 Texas, 458; Rhodes v. Whitehead, 27 Texas, 304; City of Canton v. Shock, 63 N. E. Rep., 604. On waste and failure to return surplus to stream: Kinney on Irrigation, 452; Gould on Waters, sec. 217; Long on Irrigation, secs. 42, 19; Fleming v. Davis, 37 Texas, 193; Rhodes v. Whitehead, 27 Texas, 310; Cook v. Hull, 3 Pick. (Mass.), 269; Anthony v. Lapham, 5 Pick., 175; Gould v. Stafford, 18 Pac. Rep., 879; Bathgate v. Irvine, 58 Pac. Rep., 445. On use of nonriparian lands: Long on Irrigation, sec. 13; Gould v. Eaton, 49 Pac. Rep., 577; Gould v. Stafford, 18 Pac. Rep., 879; Heilbron v. Land and Water Co., 22 Pac. Rep., 62.

The trial court erred in not enjoining defendant Watkins Land Company from selling any water to any persons or lands, or delivering any water for irrigation purposes to any lands not riparian to Toyah Creek, and from delivering to riparian owners in any quantity in excess of what such lands are lawfully entitled on a reasonable use of the water for irrigation. Heilbron v. Land and Water Co., 22 Pac. Rep., 62; City of Canton v. Shock, 63 N. E. Rep., 603.

Defendant Watkins Land Company by its dealings with plaintiff with reference to its lands, and the water in controversy, is estopped from claiming in any event more than one-half the waters of the head springs as against plaintiff. Dalton v. Rentaria, 15 Pac. Rep., 37; Curtis v. La Grande Water Co., 25 Pac. Rep., 378; Lehi Irr. Co. v. Moyle, 9 Pac. Rep., 874.

BROWN, ASSOCIATE JUSTICE.—E. Clements instituted this suit in the District Court of Reeves County against the Watkins Land Company, C. W. Giffin, Mrs. Videe Coleman, Raymond Rodrigues and his wife, Lemona Rodrigues, Aculane Villereal, Mary Villereal, Delfine Coleman, a minor, and Ysabell Coleman, a minor, represented by their guardian ad litem, G. M. Frazer. Plaintiff alleged, in substance, his ownership of certain lands, which are fully described, and that they were riparian to Toyah Creek in Reeves County, which was a well defined natural stream, and that said lands are situated within the arid portions of the State which require irrigation for the purposes of agriculture. It is alleged that plaintiff had for many years irrigated his lands from said creek; that the defendants had diverted the waters of the said Toyah Creek to unlawful uses, whereby the plaintiff had been deprived of a sufficient supply of water, and the petition prayed for an injunction restraining the defendants from unlawfully diverting said water for improper uses. The case was tried before a judge, who filed conclusions of fact from which we make this statement which is sufficient for present investigation.

Toyah Creek is a stream with well defined channels and banks, its source being what is called "a head spring" which flows twelve heads

of water, and Saragosa spring also furnishes two and one-half heads of water which flows into the said creek. A spring which the defendant Giffin uses exclusively is situated above the main spring and flows one and one-half heads of water. A head of water is that quantity which will flow each second through an opening one foot square.

Plaintiff owned surveys Nos. 117, 128, 98 and forty acres of 97, lying on the south side of said creek, all in block No. 13, H. & G. N. R. R. surveys; of which surveys Nos. 97 and 98 are riparian to the said creek and the other two are not. For many years the plaintiff had appropriated from Toyah Creek two and one-half heads of water to irrigate section Nos. 98 and the forty acres of 97 for agricultural purposes, which had been irrigated since 1876 by the Saragosa Irrigation and Manufacturing Company and the plaintiff, who acquired the land, ditches and canals from the said Irrigation and Manufacturing Company. Since 1892 plaintiff has continuously irrigated parts of sections Nos. 117 and 128 from said creek, having sufficient water to irrigate 1400 acres of land and run a mill, until the year 1902, when the water was so diminished in quantity that he was compelled to abandon the cultivation of 700 acres of land and could not run the mill. One head of water is sufficient to irrigate 300 acres of plaintiff's land.

In 1875 Daniel Murphy constructed irrigation ditches to the head spring of Toyah Creek so that he diverted one-half of the water of the said spring to the lands hereafter named for irrigation and for agricultural purposes, to wit: to 300 acres of section No. 256, to sections Nos. 257, 258, 259, 260, 265, and 429 acres of section No. 38, and all of Nos. 92 and 52. Plaintiff Clements purchased, at execution sale, all of the said lands, ditches, etc., and in 1901 sold the same to the Watkins Land Company, which company now owns all of the said lands. In the deed from plaintiff to the land company it was specially expressed that the riparian rights of neither party should be affected by that transaction. The land company now diverts from the said creek one-half of the entire flow of the head spring, thereby irrigating 1200 acres of land, and it sells water to other parties to irrigate about 1400 acres, to wit: to A. J. Carpenter 75 acres, to W. D. Casey 150 acres, to George Wrens 40 acres, to Jaime 20 acres, to E. G. Carpenter 275 acres, all of which lands are separated from the said Toyah Creek. It also furnishes water to the following named parties for the number of acres named, all of which is riparian to the said creek: J. F. Mellier 40 acres, Augustine Hernandes 230 acres, Louis Schertz 40 acres, Bessier and Hogan 30 acres, and John Moore 230 acres.

In 1879 Daniel Murphy conveyed to S. R. Miller 525¼ acres of land out of section No. 256, in the name of Antonio Ball, lying on both sides of Toyah Creek, also one-half interest in the head spring, and a line was run east and west through the center of the said spring so as to divide the same equally, and the said Murphy at the same time conveyed to said Miller 36½ acres out of section No. 257. Miller constructed ditches and canals on the said land by which he diverted water

from the creek and spring to some of the said lands. C..W. Giffin is now the owner of the land, ditches and rights which formerly belonged to Miller, and Giffin appropriates for agricultural purposes one-half of the water that flows from the head spring and the entire one and one-half heads which flows from the spring situated above the head spring. The other defendants owned a certain part of section No. 26 and irrigated from Toyah Creek about 300 acres and have done so for more than ten years.

Of the lands which now belong to the land company the following are not in the watershed of Toyah Creek, to wit: sections Nos. 258, 269, 37, two-fifths of 38, 625, one-half of 92, and all of 52. The following lands which are not within the watershed of Toyah Creek, to wit: sections Nos. 93, 94, 56 and 78, belong to persons who are not parties to this suit.

If the defendants should use only the quantity of water necessary to irrigate their lands and should return the surplus to Toyah Creek, by proper means, there would be enough water in the creek to irrigate the lands of Clements, including what he has abandoned.

The judgment of the Court of Civil Appeals enjoins the plaintiffs in error from using the water of Toyah Creek and Toyah spring to irrigate undefined parts of a number of surveys. There is an entire want of description of the parts of surveys which are denied the right of irrigation, hence the judgment of the Court of Civil Appeals is so indefinite that it can not possibly be enforced. The plaintiffs are also enjoined from furnishing water, under existing contracts, to certain persons, who are not parties to this suit. They have the right to be heard upon the question whether their lands are entitled to the benefits of irrigation. For these reasons the judgment of the Court of Civil Appeals must be reversed and this cause remanded to the District Court for a new trial.

The plaintiffs in error claim that the Watkins Land Company and Giffin each have, by limitation, acquired the right to appropriate exclusively the one-half of the water of Toyah spring. It is true that such a right might be acquired, provided it had been exercised for such length of time and under such circumstances as would bring it within the requirements of the law. Baker v. Brown, 55 Texas, 377. But the facts of this case do not establish such right in either of them. Murphy and others, who claimed under him, diverted one-half of the water of Toyah spring for more than ten years; but Clements purchased from Murphy's remote vendee all of the lands now claimed by the land company as well as the one-half of the head spring of the stream; and, at the same time, owned the lands which he now claims the right to irrigate, and thus the right to divert half of the water of the spring, if it existed, was vested in Clements, who sold to the land company, expressly reserving in the deed all riparian rights which belonged to him and specifically providing that the conveyance should in nowise affect his rights as a riparian owner. Ten years have not elapsed since the land company acquired the title from Clements, hence, as against him, there has been

no adverse possession for a sufficient time to establish the right claimed. The facts do not show that Giffin and those under whom he claims had ever exclusively appropriated one-half of the water from Toyah spring, but the trial court found that he and his vendor had appropriated water from that spring during a certain time for the purposes of irrigation. These facts do not establish in him a right to appropriate one-half of the flow of the spring.

As the case will be remanded for another trial, it is necessary for this court to pass upon the following questions: First. What lands are riparian within the meaning of the law? and second, what are the relative•rights of riparian owners?

Riparian rights arise out of the ownership of land through or by which a stream of water flows, which rights can not extend beyond the original survey as granted by the government. 2 Farn., sec. 463a, p. 1572; Lux v. Haggin, 69 Cal., 433; Boehmer v. Big Rock Irr. Co., 117 Cal., 27. The rule is well expressed by this language: "The most satisfactory rule is that the parcels of land should be regarded as riparian so far as their location with reference to the stream has indicated where their boundary should be fixed, so that all that parcel which is regarded as one tract should be regarded as riparian, leaving the question of the extent of the use which may be made of the water to the rules regulating the relative rights of owners on the stream. Under this rule the boundary of riparian land is restricted to land the title to which is acquired by one transaction."

Another limitation upon the right of the riparian proprietor is that he can not ordinarily divert water to land lying beyond the watershed of the stream. 2 Farn. on Waters, p. 1572; Bathgate v. Irvine, 126 Cal., 142. Conditions might exist that would authorize the court to extend this rule so as to permit water to be carried beyond the watershed; for example, if the drainage area be small and the supply of water abundant, so that other riparian owners would not be deprived of an ample supply, it might not be an unreasonable use to carry the water beyond the watershed, Jones v. Conn, 39 Ore., 40, 41.

In all countries and under all circumstances water is necessary for the support of human and animal life and to answer the demands of other domestic uses, therefore the law denominates its use for such purposes as natural, and accords to it preference over the demands of irrigation and manufacturing. Farn. on Waters, secs. 600, 601. Subject to the right of natural use by other riparian proprietors, each riparian owner is entitled to use the water of a stream, which flows by or through his land, for the purposes of irrigation; provided such use is reasonable, considering all of the circumstances and conditions under which it is made. Gould on Waters, sec. 217; 2 Farn. on Waters, sec. 463a; 3 Id., sec. 601; 3 Kent, 571; Hayes v. Waldron, 44 N. H., 584; Bullard v. Manufacturing Co., 77 N. Y., 525; Miller v. Miller, 9 Pa. St., 77; Union M. & M. Co. v. Ferris, 2 Sawyer, 176. In speaking of the right to irrigate, Mr. Gould says: "According to the later decisions in both coun-

tries (England and America) this is not a natural want authorizing an exclusive or undue appropriation by one proprietor, but the use of the stream for this purpose must be reasonable and must not materially affect the application of the water by other riparian proprietors. The extent of each proprietor's right to thus withdraw the water depends upon the circumstances of the case. The owner of a large tract of porous land abutting on one part of the stream could not lawfully irrigate such land continuously by canals and drains and so cause a serious diminution of the quantity of the water, though there may be no other loss to the natural stream than that arising from the natural absorption or evaporation of the water employed for the purpose." The cases which support the text are numerous, but we think it unnecessary to cite others than those given above. Each riparian owner has equal rights in the stream of water which flows by him, and the use by each must be reasonable as regards the rights of others. It is true that oftentimes it will be found difficult to determine what is a reasonable use of water under existing conditions; however, the same difficulty is encountered by courts in the determination of questions of reasonable conduct on the part of individuals in every phase of life and in all classes of business, but that constitutes no reason for rejecting the rule which makes reasonable use the standard by which to determine conflicting claims. Courts have ample authority to ascertain the relative rights of riparian owners and to regulate the manner of using the water. Wiggins v. M. Ld. and Water Co., 113 Cal., 182; Harris v. Harrison, 93 Cal., 681.

Counsel for plaintiffs in error submit the following proposition and authorities: "The rule of reasonable use of waters of a stream for irrigation purposes does not apply to lands within the arid districts of Texas, but irrigation within such districts is a natural use and the upper riparian owner has the right to exhaust all the water in the stream, if necessary, for the irrigation of his lands riparian to said stream. Rhodes v. Whitehead, 27 Texas, 304; Tolle v. Correth, 31 Texas, 362; Barrett v. Metcalfe, 33 S. W. Rep., 758; Baker v. Brown, 55 Texas, 377; Mud Creek Irrigation Co. v. Vivian, 74 Texas, 170." Under this proposition it is insisted that the plaintiffs in error had the right to use all of the water of Toyah spring and Toyah Creek, if necessary, to irrigate the lands which they owned.

In Rhodes v. Whitehead the plaintiff sought to recover damages against the defendant for erecting a dam across San Antonio River, causing the water to flow back upon the lots which belonged to the plaintiff situated upon the said river above the dam. The defendant claimed the right to maintain the dam under a grant from the former government and by a continuous use of that franchise for a period of time which gave a right by prescription. It will be seen from these facts that the right of a riparian owner to exhaust a stream for the purposes of irrigation and thereby deprive the riparian owner lower on the stream from participation in its water was not involved in that case. Judge Moore discussed

many phases of irrigation, both under the common law and the civil law, and finally made this statement: "It may be admitted that the purpose of irrigation is one of natural use, such as thirst of people and cattle and household purposes which must absolutely be, supplied; the appropriation of the water for this purpose would, therefore, afford no ground of complaint by the lower proprietors, if it were entirely consumed." The facts of the case did not raise the issue of the right to appropriate the water for purposes of irrigation, and the statement by Judge Moore, as above quoted, is obiter dictum. In support of that statement, Judge Moore referred to Evans v. Merriweather, 3 Scam., 496. In that case the Supreme Court of Illinois distinguished clearly between a natural use and irrigation by this language: "From these premises would result this conclusion: that an individual owning a spring on his land, from which water flows in a current through his neighbor's land, would have the right to use the whole of it, if necessary, to satisfy his natural wants. He may consume all the water for his domestic purposes, including water for his stock. If he desires to use it for irrigation or manufactures, and there be a lower proprietor to whom its use is essential to supply his natural wants or for his stock, he must use the water so as to leave enough for such lower proprietor. Where the stream is small, and does not supply water more than sufficient to answer the natural wants of the different proprietors living on it, none of the proprietors can use the water for either irrigation or manufactures. So far, then, as natural wants are concerned, there is no difficulty in furnishing a rule by which riparian proprietors may use flowing water to supply such natural wants. Each proprietor in his turn may, if necessary, consume all the water for these purposes. But where the water is not wanted to supply natural wants, and there is not sufficient for each proprietor living on the stream, to carry on his manufacturing purposes, how shall the water be divided? We have seen that without a contract or grant, neither has a right to use all the water; all have a right to participate in its benefits. Where all have a right to participate in a common benefit, and none can have an exclusive enjoyment, no rule, from the very nature of the case, can be laid down as to how much each may use without infringing upon the rights of others. In such cases the question must be left to the judgment of the jury, whether the party complained of has used, under all the circumstances, more than his just proportion." It is fair to presume that Judge Moore intended to express only that for natural uses the supply might be exhausted, for he does not assert that irrigation is a natural use.

In Tolle v. Correth the opinion was delivered by Chief Justice Morrill, who stated the question for decision thus: "The question for adjudication is, whether a proprietor of a tract of land in which originates a spring forming a stream, running in a channel through his land and into the land of another person, has a right to divert the stream from the natural channel and cause it to overflow and irrigate the land, pro-

vided the stream resumes its original channel before it enters the land of the adjacent proprietor?" From this statement it is plain that the relative rights of riparian owners were not in the mind of the court, which is made more manifest by this concluding paragraph of the opinion: "We would not be understood as deciding to what extent a stream can be used for irrigation purposes. The relative rights or exclusive rights are not before us." In that case the issue was between the owner of a spring who used the water for irrigation and the owner of a mill situated lower down upon the stream who denied the right of the owner of the spring to divert the water from its ordinary channel for irrigation purposes, and the court held that for irrigation he had such right. The judge who delivered that opinion copied from Rhodes v. Whitehead the expression used by Judge Moore as hereinbefore quoted, but all that was said in that opinion upon the subject of the relative rights of riparian owners was beyond the scope of the case.

Baker v. Brown involved a controversy between riparian owners as to the right of the upper owner to exhaust the stream for irrigation, depriving the lower owner of water for his natural uses. Judge Bonner stated the question to be decided thus: "The gravamen of plaintiff's action was, that the defendants, who were riparian proprietors above him on Simpson's Creek, had, by irrigating their lands from the creek, stopped the flow of water and caused it to stand in holes along and by his lands, and had deprived him of its use to supply the natural wants of his tenants and stock, and had caused noxious and disagreeable smells and malarial diseases along his lands and in the neighborhood." It was there held that the use for irrigation was subordinate to the use for domestic purposes, which involved the holding that irrigation is not a natural use. Since such proprietor may, if necessary, exhaust the supply in a domestic use, to hold that he could not do so for irrigation was to decide that irrigation is not a natural use. Judge Bonner was chief justice of the court when that case was decided.

Barrett v. Metcalfe was a suit between a corporation and riparian owners upon the Concho River, in which the corporation insisted that, by reason of its organization under the laws of the State, it acquired the right to appropriate the waters of Concho River, and, having first made the appropriation of such waters, the riparian owners above did not have authority to make use of the waters of that stream for irrigation without compliance with the laws of the State upon that subject. The case was presented to this court on application for writ of error, based alone upon the proposition that, by virtue of the law under which the corporation was organized, it had the right to appropriate the water of the river to the exclusion of any riparian owner who might claim the use of the water except through compliance with the terms of the statute. The relative rights of riparian owners were not involved in that case.

Mud Creek Irrigation Company v. Vivian is much relied upon to support the plaintiff's contention. In that case a corporation, organized

for irrigation purposes under a statute of this State, claimed the right to use the water of a stream to the exclusion of those who owned land above its dam. The corporation did not claim as a riparian owner but strictly under the statute. It alleged no ownership of any land which was riparian in character. Judge Gaines stated the issue made by the allegations of the petition, to which a demurrer was sustained, in the following language: "But it is to be noted that while it may be suspected that the plaintiff is the owner of land abutting upon the stream and perhaps crossing it, it is nowhere distinctly alleged that such is the fact, nor is it averred that it has acquired any right in the water by purchase or condemnation from any riparian proprietor. The action, judging from the averments in the petition, seems to be based in part upon the theory that the charter of the company by designation of the locality of the canal gave it the exclusive right of the water for irrigating purposes in that locality. This we think a mistake." Judge Gaines then proceeded to the discussion of the rights of the corporation under the statute, holding that it acquired no such rights by virtue of its incorporation. In connection with this discussion Judge Gaines uses language which might be construed, if disconnected from the facts of the case, as putting irrigation upon the same basis as the use for domestic purposes which is misleading as to the point decided. The following language in which the conclusion of the court was announced should be referred to the facts of the case and not to the remarks as to the character of the use of water for irrigation. The judge said: "We think, therefore, that the defendants had the right to divert the water which flowed in the stream along or through their lands for the purpose of irrigating them, although the effect of such use was to leave the plaintiff corporation an insufficient supply for the same purpose." In any view of that case the question here at issue was not involved and was not decided.

There has been no case decided by the Supreme Court of this State, or in which it has refused an application for writ of error from the Court of Civil Appeals, which is authority for the proposition contended for by the plaintiffs in error.

Plaintiffs have not the right to apply all of the water flowing from Toyah spring or along that creek to their riparian lands, but have a right in common with others to make a reasonable use of the water. Neither have they the right to appropriate any of that water to nonriparian land which they may own, although it may adjoin land owned by one of them which is entitled to the use of the water. Boehmer v. Big Rock Irr. Dist., 117 Cal., 27. Nor has either of them the right to sell water to others to irrigate lands not riparian. Ormerod v. Todmorden, L. R. 11 Q. B. Div., 162; Gardner v. Village of Newburgh, 2 Johns. Ch., 162; Higgins v. Water Co., 36 N. J. Eq., 542.

This opinion does not apply to irrigation where the water is appropriated by condemnation proceedings under statutes regulating such pro-

eeedings, nor to lands which may have been granted or sold by the State since those statutes were enacted, which declare certain waters to belong to the public.

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to the District Court.

*Reversed and remanded.*