## SUN CO. v. GIBSON et al.

(Circuit Court of Appeals, Fifth Circuit. December 21, 1923.)

No. 4163.

1. **Courts ⊜365—Riparian rights governed by law of state.**

   The rights of riparian owners are governed by the law of the state as construed by its highest court.

2. **Waters and water courses ⊜101—Riparian rights limited to original survey under law of Texas.**

   Under the law of Texas, riparian rights arising out of the ownership of land through which a stream flows, or on which a spring is situated, do not extend beyond the boundary of the original survey as granted by the state.

3. **Waters and water courses ⊜107(3)—Damages for injury to spring.**

   In an action to recover for damage to a spring situated on a tract of 160 acres of land in Texas, owned by plaintiff, it was error to admit evidence of damage to other lands of plaintiff, covered by different patents, though used as pasture in connection with such tract.

4. **Waters and water courses ⊜107(3)—Measure of damages for loss of spring.**

   In an action for damages for injury to a spring by impregnating it with salt, if the injury is permanent, the measure of damages is the difference between the market value of the tract of land on which the spring is situated before and after the injury to the spring, but if the injury is temporary the damages are measured by the depreciation in the rental value while the injury lasts.

In Error to the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Action at law by Mrs. C. A. Gibson and others against the Sun Company. Judgment for plaintiffs, and defendant brings error. Reversed, and cause remanded.

S. W. Marshall, of Dallas, Tex. (J. W. Timmins, of Dallas, Tex., on the brief), for plaintiff in error.

J. M. Wagstaff, of Abilene, Tex. (Wagstaff, Harwell & Wagstaff, of Abilene, Tex., and Conner & McRae, of Eastland, Tex., on the brief), for defendants in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

BRYAN, Circuit Judge. This is a suit to recover for damage done to four separate tracts of land, and to a very valuable spring of fresh water situated on one of said tracts, caused by salt water from a well which the defendant drilled while it was prospecting for oil. The plaintiffs, the owners of the lands, recovered judgment for $11,250, and the defendant assigns error.

The tract of land on which the spring is situated contains 160 acres of land, and is in the Swanson Donaho patent from the state of Texas. Palo Pinto creek enters this tract from the south, and runs through it and on beyond in a northerly direction. Another creek, known as Brushy creek, enters this tract from the west, and runs partly through it in an easterly direction to a point about 250 yards west of Palo Pinto creek, and then turns in a northeasterly direction for a dis-

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tance of about 300 yards, where it runs into Palo Pinto creek near the northeast corner of said tract. The spring is situated on Palo Pinto creek, about 250 yards above the junction of the two creeks, and just about east of where Palo Pinto creek changes its direction from the east to the northeast. Palo Pinto creek has never been known to go dry below the spring, but the water in Brushy creek did not flow in dry weather. The spring is a very large and valuable one, has never been known to go dry, and had always furnished good and wholesome water. It is located in an arid country, and in 1866, which was the year of one of the greatest droughts ever known in Texas, it supplied water for 8,000 or 10,000 head of cattle, which were driven there from the surrounding country.

In 1920 the defendant drilled a well to a considerable depth, from which there flowed a large quantity of salt water, which was communicated from the surface of the ground by a ditch to Brushy creek at a point a mile or more from the spring of the plaintiffs. This salt water was allowed to flow down Brushy creek and across the plaintiffs' 160-acre tract for a period of more than a year before the well was closed. Brushy creek, in its natural state, flowed only during the rainy season, but the salt water continued to flow down it, and to impregnate plaintiffs' said 160-acre tract of land, with the result that said land, which was used for farming and for pasturage purposes, was injured and damaged. Sixty pecan trees near, and for some distance away from, Brushy creek were killed. The salt water seeped through from Brushy creek into the spring, and rendered the water, both in the spring and in the creek below it, unfit for either people or cattle to drink from as early as February, 1921, until the time of the trial, which occurred in April, 1923.

The other three tracts of land owned by the plaintiffs are situated, one west, and two east, of the tract upon which the spring is, and are out of separate and independent patents. They are not contiguous to the tract upon which the spring is situated, and were not impregnated by the salt water. However, the plaintiffs used these tracts and other adjoining tracts for a cattle pasture, and, over defendant's objection and exception, the court admitted evidence of a decrease in their market value. The plaintiffs limited their proof to permanent damages, and offered no evidence to prove the amount of damage done to the farm or the value of the pecan trees on the tract first above described.

[1, 2] The rights of the plaintiffs as riparian owners are controlled by the law of Texas, as it has been construed by the Supreme Court of that state. Marshall Dental Co. v. Iowa, 226 U. S. 460, 33 Sup. Ct. 168, 57 L. Ed. 300; Archer v. Greenville Gravel Co., 233 U. S. 60, 34 Sup. Ct. 567, 58 L. Ed. 850. In Watkins Land Co. v. Clements, 98 Tex. 578, 585, 86 S. W. 733, 735 (70 L. R. A. 964, 107 Am. St. Rep. 653) which was a case involving rights arising out of creeks originating in large springs, the Supreme Court of Texas held as follows:

"Riparian rights arise out of the ownership of land through or by which a stream of water flows, which rights cannot extend beyond the original survey as granted by the government. 2 Farn. § 463a, p. 1572; Lux v. Haggin, 69 Cal. 433; Boehmer v. Big Rock Irr. Co., 117 Cal. 27. The rule is

well expressed by this language: 'The most satisfactory rule is that the parcels of land should be regarded as riparian so far as their location with reference to the stream has indicated where their boundary should be fixed, so that all that parcel which is regarded as one tract should be regarded as riparian, leaving the question of the extent of the use which may be made of the water to the rules regulating the relative rights of owners on the stream. Under this rule the boundary of riparian land is restricted to land the title to which is acquired by one transaction.' "

And also (98 Tex. 589, 86 S. W. 738 [70 L. R. A. 964, 107 Am. St. Rep. 653]):

"Plaintiffs have not the right to apply all of the water flowing from Toyah spring, or along that creek, to their riparian lands, but have a right in common with others to make a reasonable use of the water. Neither have they the right to appropriate any of that water to nonriparian land which they may own, although it may adjoin land owned by one of them which is entitled to the use of the water."

[3, 4] Damages should therefore be limited to the 160-acre tract, and to the spring situated on it. If such damages are permanent, then the plaintiffs are entitled to recover the difference between the market value of such tract of land, giving due and fair consideration to the benefits to be derived from the spring on it, before and after defendant's wrongful and negligent acts. If the damages are only temporary, recovery is to be measured by depreciation in the rental value while the injury lasts. 27 R. C. L. 1229. Undoubtedly the plaintiffs suffered permanent damages in the loss of their pecan trees. Perhaps injury was also done to the trees and to the crops, and, if so, damages are recoverable therefor as well. It is at least doubtful whether permanent damage was done to the spring, but that question can be determined more accurately at another trial, when enough time will have elapsed to enable the parties to make more convincing proof than it was possible to offer on this first trial.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.