**AMERICAN CYANAMID COMPANY Appellant,**

v.

**M. G. SPARTO et al., Appellees.**

**No. 17452.**

United States Court of Appeals
Fifth Circuit.

May 19, 1959.

426

John A. Kerr, Fort Worth, Tex., for appellant.

Rex McEntire, Doyle Willis, George D. Busch, Willis & Busch and Herrick & McEntire, Fort Worth, Tex., for appellees.

Before RIVES, JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

In 1935 the appellees, all members of the same family and all residents of Texas, purchased a 57-acre tract of land in the City of Fort Worth, Tarrant County, Texas. They have engaged in truck farming on 46.22 acres of this tract since 1936. The tract is bounded on the south and west by the Trinity River. The appellees, with the aid of three centrifugal pumps, have used the river's waters for irrigation whenever it was needed. In 1942 the appellant's plant was erected as a part of the war effort for the purpose of producing a catalyst used by oil refineries in making high octane aviation gasoline. This plant is also located on the Trinity River, upstream from the appellees' farm. In its manufacturing process the appellant uses some 1,640,000 gallons of water daily. Approximately 90% of this water is emptied into the Trinity River. This process water contains several chemical compounds which are primarily ammonium sulphate and sodium sulphate.

In September, 1953, the appellees began noticing that the crops on their land, which had theretofore been normal and healthy, showed a slow growth and were "stunted". Despite the efforts of the appellees to improve the quality of the plants by fertilizing the land, the crops in 1954 and 1955 were also stunted and the yield per acre was substantially less than it had been before 1953. In 1956 the appellees began using a new "overhead" irrigation system, but the crops did not respond. By February, 1955, it was observed that the top of the soil was turning white and that it was, "crusty and hard, just—it is just growed together; it don't pulverize like it used to." Soil tests made after the commencement of this litigation revealed that the appellees' land contained a high concentration of sodium sulphate as compared to other lands in the vicinity which had not been irrigated from the river.

The appellees brought this suit in the state court to recover damages for injury to their land and crops resulting from the appellant's alleged wrongful pollution of the Trinity River. Their complaint sought to enjoin the appellant from emptying the contaminated water into the river. The case was removed to the United States District Court for the Northern District of Texas by reason of diversity of citizenship. The case was tried to a jury and special issues were submitted. The jury found that the defendant was negligent in discharging the process water into the river and failing to warn the appellees, and that its negligence was a proximate cause of the injury to the appellees' land and crops; that the appellant had created a nuisance by discharging its process waters into the river, and that this also was a proximate cause of the appellees' injury; that the appellees were not contributorily negligent, that the injury to the appellees' land was temporary, and that the appellees should recover damages fixed at $34,431. The court overruled the appellant's motions for judgment notwithstanding the verdict and a new trial and entered judgment on the verdict. This appeal followed.

The appellant first specifies as error the court's overruling of its motions for directed verdict and for judgment notwithstanding the verdict based on the ground that the appellees' evidence failed to show that any land owned by the appellees, which was riparian in character, was injured by the effluent from the appellant's plant. The land of which the appellees asserted ownership and which is here involved is described in their complaint as "the West 46.22 acres of land and being all of the land situated on the West side of the Oakhurst Scenic Drive in the City of Fort Worth, Tarrant County, Texas," and described by metes and bounds. There is an exception from the tract, also described by metes and bounds, of a 2.66-acre tract. The appellant asserts that the excepted tract was not located, hence it may have been a part of the cultivated land for which, the appel-

lees not owning it, there could be no recovery. Plats of the land and adjacent properties, a photographic map, and abstracts of title, were introduced in evidence. M. G. Sparto was a witness and testified as to the location of the land owned and farmed by him and the other members of the Sparto family. Without objection he testified that the land was situated between the Trinity River on the west and Oakhurst Scenic Drive on the east. We think the location of the 46.22-acre tract was established and that no part of it was separated from the Trinity River by the 2.66-acre parcel.

The appellant points out that while the most of the land involved is in the W. H. Little Survey, through which the Trinity River runs, a portion is in the John Little Survey. This being so, it is said, the John Little Survey land is not riparian in character and no damages are recoverable with respect to it. Riparian rights do not extend beyond the original survey as granted by the Government,[1] but it seems that only a lower riparian owner can complain of the diversion of water by an upper riparian owner to non-riparian land.[2] The evidence is not clear as to whether the portion of the Sparto lands situate in the John Little Survey were included in the 46.22 acres, but if so, it constituted such a small portion of the whole that it should be ignored under the de minimis rule. The question was not raised in the trial court and will not be further considered here.

In 1952 the appellees granted to Tarrant County Water Control and Improvement District No. 1 an easement over 25.67 acres along the Trinity River "For the purpose of constructing, reconstructing, widening, straightening, improving and perpetually maintaining a channel or channels, levee or levees, for flood control and flood prevention along the Trinity River. * * *" In the instrument granting the easement it was recited that it was "understood that

grantors expect to continue to use that portion of the property upon which an easement is herein granted after the construction of such channel or channels, levee or levees, for truck garden purposes, using water from the river for irrigation and expect to continue to use, own, hold and enjoy such premises for any and all other purposes desired by such grantors or their assigns so long as such use does not interfere with or decrease the rights of the grantee to its easement and rights herein granted." The appellant asserts that the extent of rights granted by this conveyance is tantamount to a grant of a fee title and therefore all land east of the easement was cut off from the river and ceased to be riparian land. Appellant further argues that the appellees have no cause of action for damages to non-riparian lands resulting from pollution of the river and therefore, since the amount of the damages was not limited to the easement lands, the verdict and judgment cannot stand. We cannot adopt the appellant's construction of the easement. The grant did not divest the appellees of the possession nor, except for the purposes specified, of the use of the land. The recitals in the instrument show an intention that the lands described should be used for truck farming under irrigation from the river. The granting of the easement was no such severance of the tract, subject to the easement as to deprive the rest of the area of its riparian character. 56 Am.Jur. 733, Waters § 280.

The appellant contended that substantially all of the water in the Trinity River as it flowed past the appellees' land originated in the discharge from the appellant's plant and was not riparian, and that there was not enough riparian water to permit the appellees to irrigate their lands. The appellant requested a series of special interrogatories to be submitted to the jury as to whether there was any riparian water in the stream opposite the

1. Watkins Land Co. v. Clements, 98 Tex. 578, 86 S.W. 733, 107 Am.St.Rep. 653, 70 L.R.A. 964; 44 Tex.Jur. 49, Water § 35.

2. Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397; Humphreys-Mexia Co. v. Arseneaux, 116 Tex. 603, 297 S.W. 225, 53 A.L.R. 1147.

Sparto lands. The court refused to make the submission and error is claimed. While the only waters of a flowing stream which are available for riparian uses are those of the ordinary flow and underflow,[3] we think it would be incorrect to hold that the riparian nature of water in a flowing stream and the right of a riparian owner to use it may depend upon the source of the water. We are aware of no authority so holding. The trial court was correct in refusing to submit the requested questions to the jury.

The district court submitted to the jury a special issue in this form:

"Do you find from a preponderance of the evidence that defendant discharged soluble salts in its process water into the Trinity River and that defendant failed to warn plaintiffs that it was discharging the same into the Trinity River, and that such conduct was negligence, and that such negligence if any you have found, was a proximate cause of damage to plaintiffs' land involved in this suit."

To this question the jury returned an affirmative answer. The submission of the issue is specified as an error. The appellant says that it had the right to discharge its process water, with its soluble salt content, into the Trinity River without being under a duty to warn the appellees that it was doing so. The right of the appellant to make a reasonable use of the river for the disposal of its process water is not questioned. 56 Am.Jur. 808, Waters § 384. The right of the appellees to make a reasonable use of the waters of the stream for irrigating riparian lands must also be conceded.[4] The right of each to make use of the water is qualified by the right of the other. This doctrine has been thus stated:

"As between individual riparian owners, it is an established principle

that one may make no use of the stream that will result to the injury of the other, * * * This is but the application of the doctrine embodied in the ancient maxim, that one must enjoy his own rights so as not to injure those of another; or, as elsewhere well expressed 'the necessities of one man's business cannot be made the standard of another man's rights in that which belongs equally to both', which, of course, includes that in which both have an equal usufructuary interest, the extent of the right of riparian owners in the waters of a stream. It is but the rule of universal right and common justice, and stands in need of no sanction to give it authoritative force." Ft. Worth Improvement Dist. v. City of Ft. Worth, 106 Tex. 148, 158 S.W. 164, 167, 48 L.R.A., N.S., 994.

 Since then, the appellant's right was not an unlimited one, it follows that if the exercising of that right created a risk of injury to the appellees which might have been averted by a warning, there was a duty to warn and the failure so to do would constitute actionable negligence. Missouri Iron & Metal Co. v. Cartwright, Tex.Civ.App., 207 S.W. 397; Buchanan v. Rose, 138 Tex. 390, 159 S.W. 2d 109; San Antonio Hermann Sons Home Ass'n v. Harvey, Tex.Civ.App., 256 S.W.2d 906; Restatement, Torts, § 301, 65 C.J.S. Negligence § 89, p. 598. The special issue was proper and there was no error in submitting it. The affirmative response of the jury to the interrogatory established the negligence of the appellant and its liability to respond in damages.

 In its charge to the jury the court defined "nuisance" and no exception is taken to the accuracy or sufficiency of the definition. It submitted to the jury a special interrogatory based on

3. Motl v. Boyd, 116 Tex. 82, 286 S.W. 458; Humphreys-Mexia Co. v. Arseneaux, supra; 44 Tex.Jur. 51, Water § 37.

4. Greenman v. City of Fort Worth, Tex. Civ.App., 308 S.W.2d 553; Watkins Land Co. v. Clements, supra.

nuisance in this form, "Do you find from a preponderance of the evidence that the defendant created a nuisance, as that term has been defined herein, by discharging process water containing soluble salts into the Trinity River, and that such nuisance, if any you have found, was a proximate cause of damage to the plaintiffs' land?" The jury answered "Yes." To this question the appellant objected and the asking of it is assigned as error. The appellant in its requested charges, included interrogatories on nuisance which were the same in substance and not materially different in form from that which was propounded by the court. Having requested the submission of the issues the appellant cannot now put the court in error for having done so. Capital Traction Co. v. Brown, 1907, 29 App.D.C. 473, 12 L.R.A.,N.S., 831, 10 Ann.Cas. 813; 89 C.J.S. Trial § 572, p. 350. Cf. De Fonce Construction Co. v. City of Miami, 5 Cir., 1958, 256 F.2d 425, certiorari denied 358 U.S. 875, 79 S.Ct. 115, 3 L.Ed.2d 105.

In any event, we think the nuisance issue was properly submitted. Physical discomfort to the occupant of property is not, we think, an essential incidence of a nuisance as claimed by the appellant and as is stated in Boyd v. Schreiner, Tex.Civ.App., 116 S.W. 100.[5] Acts which damage property may also be a nuisance. City of River Oaks v. Moore, Tex.Civ.App., 272 S.W.2d 389; Continental Oil Co. v. Berry, Tex.Civ.App., 52 S.W.2d 953; King v. Columbian Carbon Co., 5 Cir., 1945, 152 F.2d 636. Cf. Burns v. Lamb, Tex.Civ.App., 312 S.W.2d 730. The finding of negligence is not inconsistent with a finding of nuisance. A nuisance may be caused by negligence and may exist irrespective of negligence. King v. Columbian Carbon Co., supra; Missouri-Kansas-Texas R. Co. v. Williams, Tex.Civ.App., 5 S.W.2d 575.

The appellant's liability for negligence and for maintenance of a nuisance have both been established. We find no error upon which to predicate a reversal of the district court's judgment. It is

Affirmed.

---

5. See also Barakis v. American Cyanamid Co., D.C.N.D.Tex.1958, 161 F.Supp. 25.