Wayne ADAMS, Appellant,

v.

NORTH LEON RIVER IRRIGATION COR-
PORATION et al., Appellees.

No. 4502.

Court of Civil Appeals of Texas,
Eastland.

Jan. 14, 1972.

Rehearing Denied Feb. 4, 1972.

C. O. McMillan, Stephenville, P. B.
Shannon, San Angelo, for appellant.

Beard & Kultgen (David B. Kultgen)
Waco, for appellees.

WALTER, Justice.

This is an appeal from a judgment ren-
dered in favor of the North Leon River
Irrigation Corporation and Brazos River
Authority against Wayne Adams and oth-
ers permanently enjoining them from
pumping water from the Leon River which
has been released from Proctor Reservoir
by Brazos River Authority for use by the
North Leon River Irrigation Corporation
and its members pursuant to permits from
the Texas Water Rights Commission.
Wayne Adams is the only one of the de-
fendants who has appealed.

Adams is a stock farmer and owns ap-
proximately 1700 acres in Comanche Coun-
ty. He has approximately seven miles of
river frontage land. Adams has been
pumping water out of the river and irri-
gating his land since 1953. He has filed

his claim with the Texas Water Rights Commission as a riparian owner.

Proctor Dam is located on the North Leon River in Comanche County. Its principal purposes are flood control and water conservation. Water is stored there for conservation and irrigation. The Brazos River Authority is a state agency and is responsible for development of water resources on the Brazos River and its tributaries. Since the Authority gets no taxes, it pays the cost of its operation from the sale of water. The North Leon River Irrigation Corporation is a non profit organization of forty-six members who are peanut farmers and own land on or near the river. The Corporation has contracted with the Authority to obtain water for its members by the terms of which contract the Authority will release an average of 2800 acre feet of water per year. The members pay the Corporation about eight dollars per acre foot for water ordered by them.

Article 7548 and Article 7549 of the Vernon's Ann. Revised Civil Statutes are as follows:

"Art. 7548. When lawful to use banks and beds

For the purpose of conveying and delivering storm, flood or rain water from the place of storage to the place of use as provided in the preceding Article, or of conveying and delivering the same to the diversion plant of the appropriator thereof, it shall be lawful for any person, association of persons, corporation, water improvement or irrigation district, to use the banks and beds of any flowing natural stream within this State, under and in accordance with such rules and regulations as may be prescribed by the Board of Water Engineers and such Board shall prescribe rules and regulations for such purpose. No person, association of persons, corporation, water improvement or irrigation district who has not acquired the right to the use of such conserved or stored waters, as pro-

vided in the last preceding Article or the right to appropriate the same shall take, use or divert same."

"Art. 7549. Wilful interference with the passage of

Any person, association of persons, corporation, water improvement or irrigation district, or the agent, officer, employee or representative of any such person, association of persons, corporation, water improvement or irrigation district, who shall wilfully interfere with the passage of, or take, divert or appropriate such conserved or stored water during the passage and delivery thereof, as provided in the last two preceding articles, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not exceeding one hundred dollars, or by imprisonment in the county jail for a term not exceeding six months, or by both such fine and imprisonment, and each and every day that such taking, diversion or appropriation may be made shall constitute a separate offense."

Article 7550 of the Revised Civil Statutes provides that it shall be the duty of the judge of the District Court to issue a writ of injunction against any person violating Articles 7547, 7548 and 7549.

The jury was instructed:

"The term 'Riparian Waters' is defined as being the waters of the ordinary flow and underflow, up to the highest normal flow of a stream, including waters standing in holes and pools in the bed of a stream after it has ceased to flow. All riparian owners have correlative rights to the normal flow of water in a stream.

Riparian water does not include water which has been lawfully appropriated by impoundment in a reservoir under permit from the Texas Water Rights Commission."

The jury found in answer to Special Issue No. 1 that Adams pumped water from

the North Leon River during the summers of 1969 and 1970 which was released from Proctor Reservoir for the members of the North Leon River Irrigation Corporation. They found in answer to Special Issue No. 2 that Adams during the summers of 1969 and 1970 used more water than his share of the riparian water of the Leon River.

Appellant cites Motl v. Boyd, 116 Tex. 82, 286 S.W. 458 (1926). The Supreme Court in State of Texas v. Valmont Plantations, 346 S.W.2d 853 (Tex.Civ.App.1963, writ ref.) has said that Motl v. Boyd is stare decisis on all matters which were in issue but pointed out six errors in the opinion that concerned matters which were obiter dictum. The controlling question in the Valmont Plantations case was whether the Spanish and Mexican laws recognized riparian rights to irrigate. The patents to each of the surveys of the lands owned by appellant were issued by the State of Texas to the original patentees during the years of 1847, 1848 and 1853.

In Watkins Land Company v. Clements, 98 Tex. 578, 86 S.W. 733 (1905) the Court said:

"In all countries and under all circumstances water is necessary for the support of human and animal life and to answer the demands of other domestic uses. Therefore the law denominates its use for such purposes as natural, and accords to it preference over the demands of irrigation and manufacturing. Farn. on Waters, §§ 600–601. Subject to the right of natural use by other riparian proprietors, each riparian owner is entitled to use the water of a stream which flows by or through his land for the purposes of irrigation, provided such use is reasonable, considering all of the circumstances and conditions under which it is made. . . .

Each riparian owner has equal rights in the stream of water which flows by him, and the use by each must be reasonable as regards the rights of others. It is true that oftentimes it will be found difficult to determine what is a reasonable use of water under existing conditions. However, the same difficulty is encountered by courts in the determination of questions of reasonable conduct on the part of individuals in every phase of life and in all classes of business, but that constitutes no reason for rejecting the rule which makes reasonable use the standard by which to determine conflicting claims. Courts have ample authority to ascertain the relative rights of riparian owners and to regulate the manner of using the water. . . .

'But where the water is not wanted to supply natural wants, and there is not sufficient for each proprietor living on the stream to carry on his manufacturing purposes, how shall the water be divided? We have seen that, without a contract or grant, neither has a right to use all the water. All have a right to participate in its benefits. Where all have a right to participate in a common benefit, and none can have an exclusive enjoyment, no rule, from the very nature of the case, can be laid down as to how much each may use without infringing upon the rights of others. In such cases the question must be left to the judgment of the jury, whether the party complained of has used, under all the circumstances, more than his just proportion.'"

The water that is released to the Corporation is measured as it is released from the reservoir. The members of the Corporation pay for the water in advance. Adams had been invited to become a member of the Corporation and the Corporation wrote him in July 1970 asking him to stop irrigating with water that had been released for the members of the Corporation but it received no response.

The witness Mull testified that with irrigation his yield had about doubled and that he did not irrigate before Proctor Dam was built because there was not sufficient water for it to be a feasible operation. The water master for the Corporation for

1969 and 1970 owns his farm and irrigates from the river. His major crop is peanuts. The water master in 1969 called for water on June 27th at a time when the flow had practically stopped in the river. He calls for water and has it released before the flow in the river stops because if it ever ceases to flow it is difficult to get the water down to his last member. The evidence reveals that water is never released until the flow of the river is low and inadequate to support irrigation.

Adams was asked the following question and he gave the following answer:

"Q Now my question is, do you claim, and do you intend to continue to pump water out of the river that has been released from Proctor Reservoir at the request of the North Leon River Irrigation Corporation, and water for which the North Leon River Irrigation Corporation has made a payment so that it can be released, if that water comes by your place, do you intend to continue to pump it, if you need water at that time?

A I don't know whose water it is, when the river is running, I intend to pump water."

 Adams contends the court erred in permanently enjoining him from pumping water from the Leon River because it deprives him of his vested riparian right to use water from the river. He contends he has a vested riparian right to use the ordinary flow and the underflow of the river and the water from the springs, water holes and pools in the river which are commingled with the water released from the Proctor Reservoir. We find no merit in these contentions. The injunction does not prohibit him from exercising his riparian rights incident to his ownership of lands abutting on the river. He is entitled to his equal rights with the other riparian owners to the "Riparian Waters" as defined in the court's charge. The only limi-

tation placed on him in the exercise of his riparian rights is to be considerate of his neighbors' rights and not take water which belongs to them.

 The appellant's point that the trial court erred in failing to make the Texas Water Rights Commission a party to this suit is without merit. The Texas Water Rights Commission was not a necessary party. Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891 (Tex.Sup.Ct. 1966); Royal Petroleum Corporation v. Dennis, 160 Tex. 392, 332 S.W.2d 313 (1960).

The judgment is affirmed.