# CAPITAL TRACTION COMPANY *v.* BROWN.

NEGLIGENCE; STREET RAILWAYS; JUDICIAL NOTICE; QUESTIONS FOR JURY; QUESTIONS ON APPEAL.

1. It is not negligence *per se* for a passenger on an electric street railway car to ride upon the platform, although there are vacant seats inside the car, and a notice is posted on the car that riding on the platform is dangerous. (Citing *Metropolitan R. Co.* v. *Snashall,* 3 App. D. C. 420; *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26; and *Koontz* v. *District of Columbia,* 24 App. D. C. 59.)

2. The dereliction of street railway companies in failing to provide adequate accommodations for their passengers is so generally known that the courts will take notice of it.

3. A passenger standing on the platform of an electric street railway car has a right to assume that the car in rounding a curve will not be run at an unlawful speed.

4. Where the evidence is conflicting as to whether a passenger while riding on the platform of a street railway car was using due care when thrown from the car and injured, the question is one for the jury (following *Adams* v. *Washington & G. R. Co. supra,* and *Barstow* v. *Capital Traction Co. ante,* 362) ; and where the trial court submits the question to the jury through a prayer for instruction offered by the company, it is too late for the latter to raise the question on appeal.

No. 1710. Submitted March 8, 1907. Decided May 7, 1907.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon a verdict of a jury in an action to recover damages for personal injuries.
*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District. The action was brought by Samuel Brown, a

colored man, against the Capital Traction Company, to recover damages sustained by reason of being thrown or jolted from one of its electric cars under the following circumstances: On the evening of October 25, 1905, which was dark and rainy, the plaintiff, his wife, and two daughters boarded the rear car of an east-bound motor car and "trailer" at the corner of 17th and F streets, N. W. The plaintiff testified that, his overcoat being quite wet, and the cars being crowded, he remained upon the front platform of the trailer, but that his wife and daughters went inside where they found seats. From the evidence introduced by the defendant it appears that there were already several passengers on the rear platform of the motor or forward car, and one or more on the front platform of the trailer, although a limited number of seats in the trailer probably could have been had by "moving up" the passengers. Certainly there was ample standing room in the rear car when Brown boarded it. He took a position on the side next the open gate, another passenger having the other side, and leaned back against the front door of the car, and steadied himself with his umbrella, which with one hand he held against the floor. With his other hand he held his own and his family's car fares. The conductor saw him board the car, and observed that he remained upon the platform. He did not, however, observe this latter fact because it was an unusual occurrence for passengers to remain upon the platform, but because it was his duty to watch his passengers in starting his car. The evidence shows that the car was somewhat behind time, owing to an accident which had occurred to another car along the line. There is also evidence tending to show that an effort was being made, when the accident occurred, to make up the lost time, and that the car did not slacken its speed as it approached the abrupt curve at the corner of 17th and F streets, the point where the accident occurred. The plaintiff did not observe that the car was nearing the curve, and, owing to the sudden and, as his evidence tends to show, unusual jolt, was pitched off the car and sustained a fracture of a leg. He had often traveled on this line before, and had often stood upon the platform as he did on this occasion.

The defendant at the trial proved that there was a notice painted upon the inner edge of the canopy which projects over the car platform, which reads: "Warning.—It is dangerous to ride on the platform." At the close of the testimony the defendant asked the court to instruct the jury that it was negligence *per se* for the plaintiff to ride upon the platform if he could have found a seat or standing room within the car. The court declined to rule as requested, and left it for the jury to say whether, under all the circumstances of the case, the plaintiff was guilty of contributory negligence.

*Mr. R. Ross Perry, Mr. R. Ross Perry, Jr.,* and *G. Thomas Dunlop* for the appellant.

*Mr. John E. Taylor* and *Mr. Hayden Johnson* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Under the circumstances of this case, did the court err in submitting to the jury the determination of the question whether the plaintiff was guilty of such contributory negligence as to bar his right of recovery?

The first case in this court in which this question was discussed was the case of *Metropolitan R. Co. v. Snashall,* 3 App. D. C. 420. The precise point here involved was not in issue in that case, because in that case it conclusively appeared that the car was crowded when the plaintiff was taken on. Certain observations, however, of Mr. Justice Shepard who delivered the opinion of the court, are applicable here. He said: "It is a matter of common observation, of which courts may be supposed to take notice, that street car companies not only permit, but sometimes seem to encourage, passengers to ride upon the car platform, cars being often stopped, when filled inside, to take on additional passengers. There was no proof that the defendant had a rule to the contrary. The act of stopping the car when crowded, for plaintiff and her companion to get on was in ac-

cordance with the common practice.  *  *  *  From this common practice it would seem that neither the owner, nor the operators of the car, nor the public generally, regarded the act ·of riding upon the platform as obviously dangerous, and it would be a harsh and unreasonable rule of law that would declare it to be so notwithstanding this common practice and general agreement of ·opinion."

In *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26, it does not appear, except inferentially, whether there was room inside the car when the plaintiff boarded it. The court said: "Riding on the platform, especially if the car was crowded, and with the implied, if not express, consent of defendant's agents, certainly did not amount to contributory negligence in law on the part of the plaintiff.  *  *  *  Whether standing thereon, with his back to the car and with his hands in his overcoat pockets, on a very cold night, was an act of negligence that, under the circumstances, contributed in an appreciable degree to his fall from the car, was a question for the determination of the jury."

In the case of *Koontz* v. *District of Columbia*, 24 App. D. C. 59, plaintiff sought to recover for injuries received, as he was riding on the footboard of a car, by being struck by a temporary obstruction placed near the car track by the District. The evidence in that case showed that when the plaintiff boarded the car it was crowded, and that he was hurt shortly thereafter. The court, however, said: "The fact appearing to the plaintiff that other passengers were allowed to ride on the footboard was some assurance to him that it could be occupied with safety, or, at any rate, that there was no special risk in being so carried.  *  *  *  It is true, the plaintiff, by taking a position and riding on the running or foot board of the car, incurred the ordinary risk of such a position, which was greater than that of being inside the car; but to ride on the footboard of a street car does not constitute negligence in law, which would justify the court in directing the jury that such act of itself was sufficient to convict the plaintiff of contributory negligence, and to defeat his right to recover for the injuries suffered by him."

The authorities in other jurisdictions are in conflict on this point, but careful research convinces us that the trend of judicial decision is towards the more practical and humane rule that street railway companies must be held responsible for conditions which they themselves create. The case of *Nolan* v. *Brooklyn City & N. R. Co.* 87 N. Y. 63, 41 Am. Rep. 345, is much in point, as the appellant in the present case contends that Brown stood upon the platform because he was smoking. In the New York case the material facts, as stated by the court, are as follows:

"The plaintiff, at a late hour of the evening, took passage upon one of the street cars of the defendant company. There were but two or three other passengers and abundance of room and vacant seats inside. Nevertheless, the plaintiff, who was smoking, rode upon the front platform. He did so, he says, because it was the custom of the line to permit no smoking elsewhere, but to permit it there. While thus riding on the platform he claims to have been thrown off and injured by the negligence of the driver. His presence upon this platform, it is now insisted, was *per se* negligence, and bars his right of recovery."

The court, after referring to the fact that the notice which the company had posted did not prohibit passengers from riding upon the platform, as provided by a statute of the State, said: "If there has been any doubt about this question, it may now be deemed settled that where the notice required by the statute is not given, it is not *per se* negligence for a passenger to ride on the front platform of a street car."

In *Watson* v. *Portland & C. E. R. Co.* 91 Me. 584, 44 L.R.A. 157, 64 Am. St. Rep. 268, 40 Atl. 699, the plaintiff was riding upon the platform of one of the defendant's cars when there was standing room inside, and was thrown off by a sudden jolting of the car, and the trial court directed a verdict for the defendant on the ground that riding upon a platform was *per se* negligence. The supreme court, however, reversed the trial court on this question, and said: "In our opinion, this was not a correct statement of law when applied to a street railroad car,

whether propelled by horses, electricity, or otherwise. Riding upon the platforms of such cars is too much encouraged by transportation companies, and too much indulged in by the public, for the court to say, as a matter of law, that the mere riding upon the platform of such a car is conclusive evidence of negligence, or is negligence *per se,* or is negligence in law.     *     *     * It is a notorious fact that street railroad companies whose cars are propelled by electricity constantly accept and invite passengers to ride upon the platforms of their cars when there is no room inside, and that persons having occasion to use such cars are frequently glad for even a foothold upon the platform, step, or footboard. Neither carrier nor public have regarded the street car platform as a known place of danger, and we are not disposed to say, as a matter of law, that a passenger who rides upon the platform of an electric street car is thereby guilty of such contributory negligence as to prevent his recovery for injuries sustained through the fault of an employee of the transportation company."

In *Augusta R. & Electric Co.* v. *Smith,* 121 Ga. 29, 48 S. E. 681, the facts are almost identical with the facts in this case. The notice in that case read: "It is dangerous to ride upon this platform or steps; to get on or off cars while in motion; to get on or off cars next to adjoining tracks. Passengers violate these warnings at their own risk." There was evidence that the passenger was smoking, and that smoking was not prohibited upon the platform, but was prohibited within the car. After referring to that fact the court said: "Regardless of this circumstance, it was undisputed that he had ridden for quite a distance on the platform, and that the conductor knew of his presence there, and made no effort to have him go inside the car. Certainly, then, the defendant cannot escape liability on the ground that he occupied a position which it permitted, if it did not require, him to occupy. His position on the platform, under the circumstances, did not render him any less a passenger of the defendant, or relieve the company of the duty placed upon it by law to observe extraordinary diligence to secure his safety."

We are content, without multiplying authorities, to adhere to

the doctrine announced in the cases heretofore decided by this court. Because of the convenience of this means of travel, valuable franchises are freely granted railroad companies, and in return therefor the public has a right to expect that due regard will be had for the convenience and safety of passengers. Unfortunately, however, the desire for revenue frequently causes these companies to disregard their plain duty. Their dereliction in failing to provide adequate accommodations for their passengers is so generally known that courts will take notice of it, for, while theoretically justice is blind, practically justice is ever alert, watchful, and progressive. "Courts," says Greenleaf (1 Greenl. Ev. § 6), "will generally take notice of whatever ought to be generally known within the limits of their jurisdiction." That overcrowding street cars, strap hanging, and platform riding are daily indulged in and encouraged, no one with eyes will deny. "The average American car rider," says a recent editorial, "during the hours of greatest traffic, has only the faintest hope of ever getting a seat, and is glad to get a strap. He is particularly pleased when he is permitted a margin of a few inches of room beyond his own girth.   *   *   * Cars that will seat forty usually carry eighty people, and often one hundred." The cause of this is obvious. Transportation companies run one car where they should run two, and a corresponding increase in profits and a corresponding inconvenience to the public results. As in this case, they usually solemnly post notices that it is dangerous to ride upon the platform, and then, day in and day out, deliberately ignore and neutralize such notices by overloading their cars and tacitly consenting that passengers ride not only upon the platforms, but upon the running boards thereof. Even though a notice prohibiting passengers from riding upon the platform is posted, it will not make it negligence in law for a passenger to ride upon the platform, if the company daily ignores its own notice, and thereby establishes a custom inconsistent therewith. It will be observed that the notice in this case does not prohibit a passenger from riding upon the platform. It merely declares it to be dangerous to do so. It is probably more dangerous to ride upon the platform

than within the car, and the passenger by taking such a position assumes the risks which naturally ensue from that position. That is to say, if the company runs its cars in a prudent manner, and the passenger falls off and is injured, that is a risk he assumed by standing upon the platform; but if he has exercised due care (which is usually a question for the jury), and is injured because of the negligence of the company in running its car, the company cannot be heard to say that he has no right of action against it, when it is responsible for the practice which resulted in his injury.

Under the police regulations in force in this District it is unlawful for an electric car to attain a speed greater than 12 miles an hour within the city limits, or a speed greater than 6 miles an hour at street crossings. Assuming that these regulations are complied with, as well as certain other regulations applicable to the construction of cars, we think it would be unreasonable to rule, as matter of law, that the mere riding upon the platform constitutes negligence. The motorman usually has his car under perfect control, and stops are made and passengers leave and enter at almost every crossing. The platform is therefore almost constantly occupied, and no one deems himself in any special danger while upon the platform, so long as the car is prudently handled. The plaintiff in this case had a right to assume that the company would comply with the law, and that the speed of the car when it rounded the curve at 17th and F streets, which, of course, is a street crossing, would not exceed 6 miles an hour. There is evidence tending to show that the car was going at a much more rapid rate of speed. If so, the law was being violated, and the company was guilty of negligence. Having consented that the plaintiff ride upon the platform, we do not think it would be either reasonable or just to permit the appellant, in utter disregard of its duty as a common carrier of passengers, to carelessly operate its cars, and injure the plaintiff, and then meet his suit for damages with the statement that, if he hadn't been there, they wouldn't have jolted him off. We do not think such a ruling would tend to lessen the practice of

overcrowding cars, or tend to increase the safety and security of passengers.

But appellant contends that, "independently of the question of appellee's right to stand upon the platform, the evidence shows he was not using due care while there." The evidence was conflicting on this point, and was therefore properly submitted to the jury. *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26; *Barstow* v. *Capital Traction Co.* present term [*ante,* 362]. Moreover, the court submitted this question to the jury through a prayer drawn by appellant. The jury having found for the plaintiff, it is a trifle late to raise the question here.

Finding no error in the record, the judgment will be affirmed, with costs, and it is so ordered.                    , *Affirmed.*