**GULF OIL CORPORATION, Appellant,**

v.

**J. B. WALTON and wife, Helen Walton, Appellees.**

No. 5297.

Court of Civil Appeals of Texas.

El Paso.

June 25, 1958.

David W. Stephens, Chas. J. Murray, Fort Worth, John R. Lee, Kermit, for appellant.

George Finley, A. R. Archer, Jr., J. Albert Dickie, Kermit, for appellees.

PER CURIAM.

This suit was brought by J. B. Walton and wife, Helen Walton, plaintiffs below and appellees here, against Gulf Oil Corporation, defendant below and appellant here, for temporary restraining order, temporary and permanent injunctions restraining and enjoining appellant, as follows:

"* * * from, and they shall desist from building any additional road to any drill site where there is an existing road to said drill site, and from building any additional drill site where there is an existing drill site or any portion thereof that can be used for the acreage for each well, and from bulldozing or scraping away the top soil, vegetation, grass and other growing plants, except where the building of an additional road to a drill site where there is no existing road that can be used to reach such existing drill site, and except where there is no drill site that can be used for the acreage for each well, and except where it is necessary to improve any existing road or portion thereof."

The court entered its temporary restraining order, and later, upon subsequent hearing, entered its temporary injunction.

Appellees are the owners of the surface only of Section 14, Block 26, P.S.L., Winkler County, Texas, and appellant is the mineral owner under the part of the section involved in this lawsuit.

In the trial, appellant introduced its map, or drawing, showing its proposed road system which was designed to reach and serve some 24 wells, of which 20 were to be drilled, and 4 existing wells to be utilized. This was all a part of appellant's planned program of water flooding, which testimony reveals is done by engineering programs and on certain set geometric patterns. Appellees' complaint was that appellant was not fully utilizing existing roads and drill sites.

Appellant's first point charges that appellees failed to allege and prove threatened irreparable injury, or the lack of an adequate remedy at law.

We think that this point is well taken. The appellant here holds the dominant estate, and as such has the right of going in and upon the surface of the land in order to produce, save and market the oil, and such, of course, includes the right of ingress and egress. The only limitation on this right of the holder of the dominant estate, to-wit, the mineral estate, is that such holder must not make an unreasonable use of the premises. If he does, he can be held accountable in damages. This right has often been tested and tried in the courts, and protected by injunction. 31–A Tex.Jur., § 52, pp. 95–97; Joyner v. R. H. Dearing & Sons, Tex.Civ.App., 134 S.W.2d 757; Stanolind Oil & Gas Co. v. Wimberly, Tex.Civ. App., 181 S.W.2d 942. These rights, naturally, are inherited by any or all assignees of leases or mineral rights. Placid Oil Co. v. Lee, Tex.Civ.App., 243 S.W.2d 860.

It is generally true that the litigant must plead irreparable injury and/or that he has no adequate remedy at law, in order to entitle himself to injunctive relief. This is true because injunction is a pure application of equitable relief, and generally speaking equitable relief is available only where there is no adequate remedy at law, and/or irreparable injury is threatened. We do not believe the injury threatened here is or can be classed as irreparable, as appellant can be compelled to pay for any damages he may cause by unreasonable use of the premises—and such amounts should not be difficult to ascertain. Irreparable injury has been defined as:

"An injury of such a nature that the injured party cannot be adequately compensated therefor in damages, or that damages which may result therefrom cannot be measured by a definite, certain or usable pecuniary standard." Lowe & Archer—Injunctions and other Extraordinary Proceedings, § 314, p. 321; Broussard v. L. Cartwright Realty Co., Tex.Civ.App., 179 S.W.2d 777; Devou v. Pence, 106 S.W. 874, 32 Ky.Law Rep. 697; Hill v. Brown, Tex.Com.App.1922, 237 S.W. 252; Storey v. Central Hide & Rendering Co., 148 Tex. 509, 226 S.W.2d 615; Humble Oil & Refining Co. v. Luckel, Tex.Civ.App., 154 S.W.2d 155. The above authorities and others are illustrative of the extent of pleading and proof necessary to entitle one to injunctive relief. Of course, it must be kept in mind here that appellant owns the dominant estate, with the full right of exploration, production, etc.

Appellant's second point charges that the court abused its discretion in granting the temporary injunction for the reason that there was no evidence that appellant's proposed roads and drilling sites on this property known as the Ida Hendricks A "Lease" would use more of the surface than was reasonably necessary for the operation. We have examined the record with regard to this point, and it appears that appellees were able to show only that there were, in some areas, existing roads, or roads that had once been in existence. There was no evidence that these old roads were practical or in condition to use in a practical manner for appellant's purposes. A water flooding plan calls for a geometric spotting of wells for the intake of water, in order to recover a better percentage of oil from the wells as producers. Under its lease, the appellant had the right to water flood this property, and that right carried with it the further right to do it in the manner, and on the locations, thought most feasible by its experts. Taking the testimony of appellees' witnesses at its most optimistic interpretation and highest value, we find only that there were some so-called existing roads, or old roads. The witnesses testifying were ranchers, and admittedly did not know if the roads were usable for any heavy machinery or the demands that appellant might make upon them. The maps introduced in evidence seem to us to reveal that appellees' proof here did not warrant the court in granting its temporary injunction. In the first place, most of the roads have already been built; and in the second place, admittedly there are no roads to some of the proposed drill sites; and thirdly, there is no evidence that the roads once used are feasible and economical under this water flood spotting plan or development. Appellees were not able to prove that there were existing roads that were available and usable for the pattern of drilling wells set up by appellant. Of course this injunction must not prohibit any legal rights or privileges inherent in appellant as assignee of the lease and owner of the dominant estate.

With regard to appellees' claim that appellant should use drill sites that had been used for other wells, now abandoned, we do not find merit in this position, as we believe the holder of the mineral estate has the right to put his wells where he wants to, and that does not mean that he shall be forced to use or try to utilize abandoned wells, or that he must drill so

close to such abandoned wells that he can utilize all or part of the former drill site. We believe it would be an unwarranted restriction on the rights and privileges held by the holder of the mineral estate, as he is presumed to know from exploration in this section and expert testimony, the best place, or the place in his best judgment, where he wants to drill his well. After all, he is the one producing the minerals and spending his money therefor, so we do not believe there is merit in appellees' contention that appellant should use former drill sites or drill close enough to former wells in order to use such drill sites. Therefore, we believe and hold that appellant's second point is well taken, in that appellees failed to prove that the road program of appellant contemplated an unreasonable use of the surface, or that the proposed location of his drill sites did likewise. The record shows that appellant presented considerable expert testimony that the proposed use of the surface was feasible and practical, and not an unreasonable use. This testimony was supported by diagrams and descriptions, and appellees here were able only to counter with the testimony of the surface owner that he thought such was unreasonable. It seems to us, therefore, that this highly specialized type of development, which was explained and justified by expert testimony, was not rebutted in such a manner as to indicate that the plan encompassed an unauthorized use of the surface.

 Appellant's third point complains of the terms of the temporary restraining order. The part important to this controversy has been set forth in the first paragraph. It can be readily seen from examining the same that appellant has not been properly or specifically informed of that which he is enjoined from doing. It has long been elementary that an injunction must be definite, clear and concise, leaving the person enjoined in no doubt about his duties, and should not be such as would call on him for interpretations,

inferences or conclusions. In short, it should leave nothing for further dispute. Here, the order states that appellant shall not build any additional road to a drill site where there is an existing road, but it does not say that such existing road shall be usable or feasible. It might be on a road leading in from an opposite direction from the warehouses or headquarters of the operator. It further restrains appellant from building any additional drill site where there is an existing drill site that can be used. This, we believe, is inviting further disputes and, possibly, contempt hearings. The rest of the above quoted paragraph also restrains appellant, but does so using the word, or phrase, "that can be used", also, "where it is necessary". Such we do not believe to be sufficiently specific. There was submitted to the court a complete diagram showing every well and proposed well, and every road and proposed road leading to drill sites; but this temporary restraining order, we think, is not specific enough to end the controversy, as it was intended to do, but, most important, not specific and concise enough to inform appellant of the prohibitions under same without leaving anything to inference or interpretation. Unless an injunction is clear and specific, it can only lead to further hearings, probably of a contempt nature— first, to ascertain the real meaning of the injunction; second, to ascertain if such has been violated; and third, if such violation was willful. We do not feel, therefore, that this injunction meets the test of sufficient definiteness, and hold that the appellant's third point is, therefore, good. Fort Worth Acid Works v. City of Fort Worth, Tex.Civ.App., 248 S.W. 822; Watkins Land Co. v. Clements, 98 Tex. 578, 86 S.W. 733, 70 L.R.A. 964; Seastrunk Rendering Co. v. Hollingsworth, Tex.Civ.App., 177 S.W.2d 1014.

For the above reasons, appellant's points are sustained. The judgment of the trial court is accordingly reversed, and the injunction therein granted, dissolved.