**INTERNATIONAL LIFE INSURANCE COMPANY, Appellant,**

v.

**E. T. HERBERT et al., Appellees.**

No. 3699.

Court of Civil Appeals of Texas.

Waco.

March 24, 1960.

Rehearing Denied April 14, 1960.

Mays, Robertson & Bohannon, Dallas, for appellant.

Anderson & Anderson, James E. Ferguson, Cleburne, for appellees.

McDONALD, Chief Justice.

Plaintiff, E. T. Herbert, beneficiary of an insurance policy on his deceased mother, brought this suit against defendant International Life Insurance Company upon an insurance policy (which he alleges was for $1,000), and in the alternative for a return of premiums paid. Trial was before the court without a jury, which after hearing, rendered judgment for plaintiff for return of $995.86, total amount of premiums paid, plus interest from date of payment. Such judgment recites that the

insurance policy issued by Union Reserve (predecessor company of defendant) is rescinded because its inception was a fraud upon the insured; and for the further reason such policy was never accepted by the insured; and there was in fact no contract between Union Reserve and the insured; and for the further reason the insured did not have the mental capacity on 1 April 1942 to know the terms of such policy.

Upon request, the Trial Court filed Findings of Fact and Conclusions of Law, pertinent portions of which follow:

### Findings of Fact

1 & 2) Mary C. Herbert died a natural death on 18 October, 1958, intestate, at the age of 90 years.

3) Policy 2811 issued by Security Life Insurance Company on 5 September, 1933, provided for the payment of $1000 to the named beneficiary, if insured Mary C. Herbert, died a natural death.

4) Thereafter, Southern Mutual Life Insurance Company, by its Certificate of Assumption, assumed liabilities of Policy 2811.

5) On 16 November 1936, Texas Benevolent Association of Brownwood, by its certificate assumed liability of Policy No. 2811.

6) On 1 December 1937, Protective Life Insurance Company, by its certificate, assumed liability of the previous policies.

7) On 1 August 1939, Texas Independence Life Insurance Company, by its certificate, assumed all liability on the previous policies.

8) That by letter dated *28 March, 1942* from Texas Independence Life Insurance Company to Mary C. Herbert, she was led to believe that the policy to be issued by Union Reserve Life Insurance Company would provide the *same* benefits as the policies previously held by her, including policy 2811 issued by Security Life Insur-

ance Company. That said letter was mailed to Mary C. Herbert with the intention that she act thereon and with the knowledge that the statements therein made would deceive her and would cause her to believe that she would have full protection in the amount of $1000 insurance under the policy to be issued by Union Reserve Life Insurance Company, and that policy 14195, issued by Union Reserve Life Insurance Company was issued with the intent that Mary C. Herbert receive and accept same in lieu of the policies previously issued to her, and with the knowledge on the part of the officers of Union Reserve that she would be deceived thereby and in fact she was thereby deceived.

9) The letters, statements, and policies mailed to Mary C. Herbert by the Union Reserve Life Insurance Company and by defendant International Life Insurance Company, were issued and mailed to her with the intention to deceive her and lead her to believe that she was receiving and had in effect a policy providing for insurance upon her life in the full amount of $1000, and in fact said letters, statements and policies did so deceive Mary C. Herbert and led her to believe that she had an insurance policy providing for full coverage of insurance on her life in the amount of $1000.

10) That Mary C. Herbert, at the time of receiving the Union Reserve Life Insurance Company policy No. 14195, dated 1 April, 1942, on account of her age and mental disability did not have the mental capacity to understand the contents of the same or to accept the same; that in fact she did not accept said policy, but in good faith believed her original policy with full insurance coverage of $1000 was still in full force and effect.

11) That Mary C. Herbert and those acting for her, including E. T. Herbert, paid premiums of $4.97 each month to Union Reserve Life Insurance Company and its successor, International Life Insurance Company, the defendant herein, from April

1, 1942 up until her death, in good faith believing that she had in effect a life insurance policy on her life providing for the payment of $1000 to her beneficiary upon her death, and defendant International Life Insurance Company, (and its predecessor Union Reserve), received and accepted all of said premiums, knowing or having good reason to know that Mary C. Herbert believed or had good reason to believe that the insurance policy which she held insured her life for $1000; that the premiums so paid amounted to *$995.86* as of 22 May 1959; that Mary C. Herbert and those acting for her, including E. T. Herbert, were induced to pay said premiums by written statements and letters issued by the defendant, International Life Insurance Company.

## Conclusions of Law

1) Policy 14195 issued by International Life Insurance Company, dated 1 April 1942, together with the letters and written statements mailed to Mary C. Herbert by Union Reserve and Defendant International Life Insurance Company, constituted a fraud on said Mary C. Herbert.

2) That said policy was never accepted by Mary C. Herbert and there was no contract between Union Reserve Life Insurance Company or International Life Insurance Company and Mary C. Herbert; and that the premiums paid Union Reserve and International Life Insurance Company by said Mary C. Herbert in the amount of $995.86 were paid and received without any consideration or without adequate consideration, and that the plaintiff should recover from defendant said sum of $995.85 with interest thereon from the date of each payment.

Defendant Insurance Company appeals upon 15 points, but which present 4 basic contentions: 1) The Trial Court erred in rescinding policy 14195 issued by Union Reserve (now International Life Insurance Company), because plaintiff failed to plead or prove the necessary elements of fraud to entitle him to recover; 2) Where policy of insurance company to insured clearly shows on its face the benefits provided, and in addition contained a full copy of contract between such company and another insurance company under the terms of which such policy was issued, insured was given full notice of the terms of such policy and contract, and her acceptance and retention of such policy ratified and confirmed both the policy and contract; and the Trial Court erred in rescinding the policy and ordering refund of the premiums; 3) The Trial Court erred in holding that Mary C. Herbert did not have the mental capacity on April 1, 1942 to realize the important meaning of the terms of the policy issued by Union Reserve, (now International Life Insurance Company), for the reason there was no proof adduced showing the mental condition of Mary C. Herbert on April 1, 1942; 4) The Trial Court erred in allowing plaintiff by Trial Amendment to bring in new parties after the close of the evidence and the cause submitted to the Trial Court and taken under advisement by the Trial Court.

We revert to defendant's 1st and 2nd contentions.

Plaintiff plead that the transfers from Security Life Insurance Company and its successors were fraudulently made and fraudulently accepted and assumed; and that the transfer from the Texas Independence Life Insurance Company to Union Reserve (predecessor to defendant International Life Insurance Company) was made in a fraudulent and misleading manner, calculated to fraudulently mislead, deceive, and defraud the insured of her premium payments, and did take from her under false pretenses her premiums, all the while furnishing insured with the information that she had insurance in the amount of $1000.

The disclosures made in this case point up the urgent and continuing need for stricter laws and regulations governing the operations of Insurance Companies in this State. This case is a revelation of a woman who, in 1933, took out a $1000 policy of insur-

ance on her life, initially paying $4.50 per month in premiums (later increased to $4.97 each month); of how the Insurance Company transferred its assets and liabilities in connection with such policy some five different times to and through five different companies until it finally came to rest with the Union Reserve Life Insurance Company, which later changed its name to International Life Insurance Company, and is the defendant herein; of how the 4th Insurance Company transferee urged the insured to continue with the Union Reserve, writing:

"The policies which will be issued by the Union Reserve Life Insurance Company will provide the same benefits as policies now held by you * * *. In our opinion a person's life insurance policy should be considered among his most valued possessions and one of the greatest protections of his loved ones. We therefore urge you to keep the policy issued to you by the Union Reserve Life Insurance Company in full force and effect by making premium payments promptly. Until such time as you receive the policy, continue to make prompt premium payments to this Company in order that you will be protected at all times and in order that you will receive one of the Union Reserve policies. You will be given credit for any advance payments made. The Union Reserve Life Insurance Company is an old line legal reserve stock company organized under the laws of the State of Texas and licensed to do business in this State by the Board of Insurance Commissioners. The Company will maintain legal reserves and will in every way operate as other old line legal reserve companies now doing business in this State."

This record discloses that thereafter the Union Reserve (former name of defendant International Life Insurance Company) did mail insured a policy. Such policy provided that it would pay the amount of insurance, which the monthly premium (un-der a table in the policy reflected) would provide at the attained age of the insured. (As of 1942, utilizing such table, insurance in the amount of approximately $210 would have been provided). Such table provided a diminishing scale so that at death of insured approximately $72 was provided for.

It would appear that all Union Life Insurance Company gave to Mrs. Herbert in the new policy was the same premium; certainly not the same amount of insurance. The insured paid premiums for 16 years in the amount of $956.86, to the defendant.

■ Where an Insurance Company transfers its policies and assets to another company which agrees to rewrite the policies according to its own rates, a beneficiary is only entitled to recover benefits in accordance with the rewritten policy, *where no fraud is perpetrated upon the insured*. Simon v. Atlanta Life Ins. Co., Tex.Civ. App., 204 S.W.2d 201. Fraud vitiates every transaction tainted by it; it annuls every transaction which is infected by it. Drinkard v. Ingram, 21 Tex. 650.

Appellant complains that there is no competent evidence in this cause of any act or omission on the part of Appellant that could be construed as fraud, and that any fraudulent misrepresentations were made by Texas Independence Life Insurance Company (which was the transferor company to appellant). While we do not agree with the foregoing, we observe that in any event, Appellant received the *benefit* of the fraud of Texas Independence Company.

"Partaking of the benefits of a fraudulent transaction ordinarily makes the participants principals and liable as such." 20A Tex.Jur. 124.

■ Appellant was a participant in the overall transaction. It was receiving the mortuary fund on the policy here involved and was transferee from Texas Independence of a number of policies. Since Appellant received benefits flowing from the fraud of Texas Independence, it be-

comes liable as a principal and liable to the defrauded party to the extent of the benefits received (which include all premium payments.)

Moreover, we note that the policy furnished Appellant in 1942 provided for an annual premium of $59.64, and provided for payment of insurance in the amount of $210 upon the death of the insured if such death occurred during the first year. Such insurance diminished materially each year thereafter until at the time of Mrs. Herbert's death, the annual premium of *$59.64* (which did not diminish) was consideration for insurance in the amount of only *$72*.

This court, in King v. Cliett, Tex.Civ. App., 1930, 31 S.W.2d 350, 354, W/E Ref. held:

"Our courts universally hold that where a contract, on its face, is so extortionate and unconscionable as to raise a presumption of fraud, it requires but a small amount of evidence to justify setting same aside. * * * 'Where the inadequacy (of consideration for contract) is so gross as to shock the conscience and common sense of all men, it may amount both at law and in equity to proof of fraud, oppression and undue influence.'

"Our courts further lay down the general rule that, *where a contract is obtained for an inadequate consideration by reason of a misrepresentation of law or fact,* or by reason of the weakness of the mind of one of the parties, or by gross imposition or under circumstances of oppression which would justify a finding of undue influence, a court of equity will set the contract aside."

The foregoing bears a straight-out refusal for writ of error by our Supreme Court.

We think the policy contract herein so extortionate and unconscionable as to raise a presumption of fraud; and that the record fully sustains the action of the Trial Court in rescinding the contract.

Defendant's third contention is that there is no evidence to sustain the Trial Court's finding that Mary C. Herbert did not have mental capacity to realize the important terms of the policy issued by Union Reserve on April 1, 1942. Mrs. Herbert was 74 years of age in 1942. There is direct evidence that she was not mentally capable as of 1946. Mrs. Herbert's son testified that he did not know whether his mother read the policy of April 2, 1942 or not, but that he could not say that she would have known or understood what the policy was about, had she read it. This cause was tried before the court without a jury. The Trial Judge heard the testimony and observed the demeanor of the witnesses. We cannot say from a consideration of the record in its entirety that the Trial Court was not justified in the finding on Mrs. Herbert's mental capacity; nor can we say that there is no evidence to sustain such finding.

Fraud is the successful employment of cunning, deception or artifice to circumvent, cheat or defraud another to his injury. Whenever one party has been injured, directly or indirectly by the artifice or fraud of another, it is for the court to determine whether what was done amounts to cognizable fraud. And in determining this question, the court will be governed by the materiality of the fraud alleged to the contract sought to be avoided, or damages to be recovered in consequence of it. 20A Tex.Jur. pp. 10, 11. When one of the parties to a transaction is shown to be mentally weak, the circumstances will be more closely scrutinized and weight will be given to slight evidence of imposition and circumvention. When the evidence shows fraud, it relates back to the inception of the matter about which it is connected, and, as between the parties, vitiates the entire transaction, for there can be no real assent when an apparent agreement is induced by fraud. 20A Tex.Jur., 16 et seq.

Defendant's contentions one, two and three are overruled.

We revert to defendant's fourth contention. After trial of this case, but before judgment was rendered, the Trial Court permitted additional parties to be made parties plaintiff. This cause was filed by E. T. Herbert, son of the deceased insured and sole beneficiary under her insurance policy. When it developed that plaintiff had plead alternatively for a return of premiums paid, Mrs. Herbert's heirs at law would be the parties entitled to recover same, in the event of a recovery. The action of the Trial Court in allowing plaintiff to bring in as parties plaintiff Mrs. Herbert's heirs at law, (she dying intestate) was proper and within the sound discretion of the Trial Court. 32 Tex.Jur.Sec. 21, p. 35, Rules 41 to 66 Texas Rules of Civil Procedure.

Under the record before us, we cannot say that the Trial Court has abused its discretion in affording the equitable relief of recission, nor do we believe defendant has shown any reversible error. All of defendant's points and contentions are overruled and the judgment of the Trial Court is affirmed.

WILSON, J., concurs in the result.