Harold KUNZ, Jr., et al., Appellants.

v.

H. Glenn HUDDLESTON, Appellee.

No. 6517.

Court of Civil Appeals of Texas, El Paso.

Jan. 26, 1977.

Rehearing Denied Feb. 23, 1977.

**686**

Alfred W. Offer, San Antonio, for appellants.

Foster, Lewis, Langley, Gardner & Banack, Inc., Edward Kliewer, III, San Antonio, for appellee.

OPINION

WARD, Justice.

This case involves the dissolution of a partnership, Kunz-Huddleston Interest. H. Glenn Huddleston filed suit against his partner, Harold Kunz, Jr., for injunctive relief, for dissolution of the partnership, for an accounting, and for damages. Joined as a Defendant was Kunz Construction Company, Inc., which filed a cross-action against the partnership, and in which, among other things, it sought judgment for the balance due under a construction contract. Trial was to a jury, which in the main determined that certain actions of the Defendants breached the fiduciary duty owed to the Plaintiff, that the Plaintiff had been damaged in the amount of $3,187.50, and that the unpaid balance owed by the partnership to the Defendants on the construction contract was $33,934.72. Thereafter, a judgment of accounting was entered, and the Plaintiff recovered $3,187.50 as damages from the Defendant, Harold Kunz, Jr.; Kunz Construction Company, Inc., recovered $33,934.72 against the partnership; the partnership was dissolved, and the Plaintiff, as the partner not in the wrong, was given the right of first refusal to purchase all partnership assets as provided under the terms of Article 6132b, Sec. 38(2)(b), Tex. Rev.Civ.Stat.Ann. The Defendants have appealed. We affirm the judgment after modification in one respect.

Huddleston and Kunz entered into a verbal partnership agreement in 1972 that they would purchase, construct, and manage certain small drive-in shopping centers, it being agreed that Huddleston would secure the locations, tenants, and financing, and finally manage the completed properties, and that Kunz would be the general contractor. The parties secured two locations which they proceeded to develop, one in Schertz and one on Bandera Road in Bexar

County. The Bandera Road property was acquired in the summer of 1972; some work was done on it in that year, but the main construction was not undertaken until 1973. In June, 1972, $125,000.00 was secured as an interim construction loan from the Bexar County National Bank of San Antonio, the note being executed by the two partners and being secured by a deed of trust on the Bandera Road property. Thereafter, the Plaintiff secured a permanent loan commitment from Transport Life Insurance Company in the amount of $150,000.00, which the partners accepted in May, 1973, and for which the partnership paid a loan commitment fee of about $6,500.00. During this time, the Schertz property had been acquired, and a drive-in grocery and ice house had been constructed and occupied and was being managed by the partnership at the time of trial. The two partners entered into a written partnership agreement on June 14, 1973, and it was the parties' different interpretation of that agreement that precipitated their dispute.

The agreement provided that neither party should receive any salary or compensation for their services during the initial acquisition, financing, construction, or leasing of the properties. One provision provided that Kunz would, without compensation, profit, or reimbursement for personal expense, act as a general contractor "either informally, or at his option, with a standard AIA form construction contract with himself or with Kunz Construction Company, Inc., or with such other firm as he may designate, for the improvements to be erected on Partnership properties." The signatures of both partners were required in connection with such building contracts.

In undertaking his part of the partnership project, the Defendant Kunz elected to proceed through Kunz Construction Company, Inc., of which he was president and eighty-five percent of the capital stock of which was owned by him. On August 15, 1973, the Plaintiff received a bill from Kunz Construction Company in the amount of $34,589.85 on the Schertz property. This bill was paid by the partnership, but the Plaintiff immediately questioned the markup and the profit to the corporation as not being in harmony with the spirit of the partnership agreement. Again, on January 30, 1974, the Plaintiff received a bill from Kunz Construction Company showing that $57,101.00 was then owing on the balance of the construction. Upon examination by the Plaintiff, the statement reflected a profit figure on construction by Kunz, or his company, of $5,773.57, this again being contrary to the Plaintiff's understanding of the partnership terms. The Plaintiff also objected because the contract with the corporation had not been approved by the Plaintiff. Other charges were also shown which the Plaintiff felt were excessive. This disagreement delayed the final closing of the permanent loan and resulted in the loss of the commitment. On February 14th, after lengthy discussion and examination of the bills, Kunz changed his demand to $54,841.16, and the Plaintiff again refused to permit the bill to be paid from partnership funds as it was still excessive.

On February 18, Mr. Kunz, as President of Kunz Construction Company, Inc., executed and then filed an affidavit to secure an involuntary lien on the Bandera Road property regarding this debt for $54,841.16. On March 11, without any notice being given to the Plaintiff, the corporation purchased the $125,000.00 partnership note from the Bexar County National Bank of San Antonio, together with the lien of the deed of trust security, paying therefor the sum of $3,467.06 in interest due and the balance being a corporation note for $99,216.10, payable to the bank and being the amount then owing on the principal of the partnership note. As collateral for the last note, the corporation, by Mr. Kunz, granted to the bank a security interest in the partnership note, reserving to the corporation the right to foreclose under the deed of trust. Also on March 11, the corporation, by substitute trustee, posted the Bandera Road property for foreclosure sale and the Plaintiff was notified of the posting on March 14th. The Plaintiff then filed the present suit.

At the trial on the merits, the jury was instructed by the Court that they would treat the acts of the Defendant, Kunz Construction Company, Inc., in dealing with the Kunz-Huddleston Partnership and/or the Plaintiff, as the acts of the Defendant, Harold Kunz, Jr. In answer to Special Issues Nos. 1 through 5, the jury determined that the actions were taken by Harold Kunz, Jr., acting by and through the Kunz Construction Company, Inc., in submitting the $57,101.00 construction bill, in purchasing the $125,000.00 real estate lien note from the Bexar County National Bank of San Antonio, in filing the involuntary lien and attempting to foreclose the partnership property, and Kunz's refusal to execute the final loan closing documents, were all a breach of the fiduciary duty owed to the Plaintiff by the Defendant, Harold Kunz, Jr. In answer to Special Issue No. 6, the jury found that such actions were done in fraud of the Plaintiff, and in answer to Special Issue No. 8, the jury determined that the damages sustained by the Plaintiff due to the breach of the fiduciary duty by the Defendant, Kunz, was $3,187.50. By Special Issue No. 9, the jury found that the Plaintiff would suffer irreparable harm if the Defendants were allowed to foreclose on the property. In answer to Special Issue No. 14, the jury found that as to the disputed bill, the reasonable value of the labor and materials unpaid and furnished by Harold Kunz, Jr., and/or Kunz Construction Company, Inc., was $33,934.72.

Plaintiff, by two counterpoints, contests our consideration of any points based on the amended motion for new trial and any points of error complaining of the charge, as the Defendants in these areas have failed to follow the applicable briefing rules. Rules 274 and 320, Tex.R.Civ.P. The contest is brought about because the Defendants' objections to the charge consist of some forty pages in the transcript, and the amended motion for new trial consists of thirty-nine pages with 153 assignments of error, many relating to alleged errors appearing at three other places during the trial, for a total of 288 assignments of error. The above is compounded as the Defendants' brief contained fifty-one points of error, none of which point out the germane assignments of error, and are contrary to Rule 418(b), Tex.R.Civ.P. Regardless of the validity of the Plaintiff's challenges as to many areas of the brief, they will be overruled insofar as they apply to the Defendants' first five points, which complain of the Court's instruction to the jury that in making their answers they would treat the acts of Kunz Construction Company, Inc., in dealing with the partnership or with the Plaintiff, as the acts of Harold Kunz, Jr., individually. Essentially, these first five points assert that there was no evidence that Kunz and the corporation constituted a single entity; that the corporation was not a sham; and that it was error to disregard the corporate fiction and to "pierce the corporate veil."

The actions described as occurring in 1974 are without dispute. The Defendants' argument ignores the applicable relationship of one partner being a fiduciary and accountable as such to the partnership. Art. 6132b, Sec. 21, Tex.Rev.Civ.Stat.Ann.; *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786 (1938); 19 Hamilton, Texas Practice, Sec. 129. As pointed out in the cited authorities, the fiduciary duty established by this section of the Act should be broadly construed, and runs not only to the partnership, but to the other partner as well. At the time that Kunz, while acting for his corporation, executed and filed the affidavit to secure the involuntary lien on the partnership property and had the corporation purchase the partnership note and lien and proceeded to attempt the foreclosure, strained personal relations between the partners existed and Kunz undoubtedly was attempting to protect his corporation and himself. He may have felt that he had an unreasonable partner on his hands, that the partnership, for all purposes, was at an end, and that he could proceed at arm's length to protect himself. That was of no material importance, as pointed out in *Johnson v. Peckham,* supra, at 788:

" * * * Because of the strained relations which had developed he probably

felt he was perfectly justified in dealing with his partner as a stranger. That is the standard of the market place, but in courts of equity a much higher standard for measuring conduct obtains.

\* \* \* \* \* \*

"When persons enter into fiduciary relations each consents, as a matter of law, to have his conduct towards the other measured by the standards of the finer loyalties exacted by courts of equity. That is a sound rule and should not be whittled down by exceptions. If the existence of strained relations should be suffered to work an exception, then a designing fiduciary could easily bring about such relations to set the stage for a sharp bargain. There is no suggestion in this record that Peckham did that thing, but mischief would result more often from engrafting exceptions upon the general rule than from a strict adherence thereto."

■ Kunz admitted that he was responsible for all decisions made by the corporation, and the instruction made by the Court was based on this undisputed testimony. The justification for the instruction was based on accepted principles of agency, and the liability of Kunz was that of a principal and not because he was the controlling shareholder of the corporation whose "veil was pierced." 19 Hamilton, Texas Practice, Sec. 234 at 225. But if justification for the name calling of "piercing the veil" be required, that can readily be found in the facts of this case. The corporate structure was used by Kunz to avoid his existing legal obligation as a fiduciary, as required by the partnership and as called for under the partnership statute. *Delaney v. Fidelity Lease Limited,* 526 S.W.2d 543 at 546 (Tex.1975); *Sutton v. Reagan & Gee,* 405 S.W.2d 828 at 837 (Tex.Civ.App.—San Antonio 1966, writ ref'd n. r. e.). Kunz could not be permitted to avoid his fiduciary duty by use of this corporation. The Defendants' first five points are overruled.

■ By a series of eight points, the Defendants challenged the submission of Special Issues Nos. 1 through 8, inclusive, on the grounds of no pleadings for their support. The objections to the charge consist of a long series of stock objections, among which are those of no pleadings, and the Defendants have effectively obscured any real complaint in this regard. Again, the assignments of error are of like character, and on this basis, we would be justified in overruling these points. *Monsanto Company v. Milam,* 494 S.W.2d 534 (Tex.1973); Rule 274, Tex.R.Civ.P. Regardless of that, the Plaintiff's pleadings set out in detail the events which occurred and the manner in which the Defendant Kunz breached his fiduciary duty and committed a fraud upon the Plaintiff's rights. Construing the Plaintiff's second amended original petition as favorably as possible for the pleader, the Defendants' points 6, 9, 12, 15, 18, 21, 25, and 28 are overruled. *Gulf, Colorado & Santa Fe Railway Co. v. Bliss,* 368 S.W.2d 594 (Tex.1963).

By a series of nine points, the Defendants challenge the submission of Special Issues Nos. 1 through 9, inclusive, on no evidence grounds. The criticism made above applies equally here. However, a review of the statement of facts also shows that these points are without merit. Special Issue No. 1 requested that the jury answer whether the submission of the $57,101.00 bill was a breach of the fiduciary duty owed to the Plaintiff by the Defendant Kunz. The evidence is undisputed that the bill was submitted, and in addition, this bill was shortly thereafter changed to $54,841.16. During the trial, the Defendants testified through their witnesses that the bill should have been in the amount of $46,845.96. On the other hand, the Plaintiff's witnesses testified that even the last figure was excessive as it was in excess of the reasonable value of the work done by the Defendants. Further, there was ample evidence to sustain Special Issue No. 14 where the jury found that the reasonable value of the unpaid bill was $33,934.72. The issues submitted relating to the balance of the actions taken by Kunz in 1974 when he acted through his corporation were undisputed, and as discussed were a breach of the fiduciary duty owed by him to the Plaintiff.

Special Issue No. 6 required the jury to determine if any of the acts set forth in Special Issues Nos. 1 through 5 constituted fraud upon the right of the Plaintiff. In addition to asserting that there was no evidence to support the jury's answer, the Defendants also assert there was insufficient evidence to support the jury's answer to Special Issue No. 6. The trial Court instructed the jury that fraud was defined as " * * * the successful employment of cunning, deception or artifice to curcumvent, (sic) cheat or defraud another to his injury." This followed the definition set forth in the case of *International Life Insurance Company v. Herbert,* 334 S.W.2d 525 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.). When we consider the Plaintiff's testimony that without notice the Plaintiff suddenly found himself in the position of either paying what he considered to be an extravagant construction cost, or facing the possibility of losing the final loan commitment and the ultimate liability to the Bexar County National Bank of San Antonio, then the evidence of the deceptive practices by Kunz justified the submission of the issue. By Special Issue No. 7, the jury determined that the breaches of fiduciary duty by the Defendant were a proximate cause of monetary damages to the Plaintiff. Special Issue No. 8 inquired as to the amount of monetary damages suffered by the Plaintiff proximately caused by the Defendant Kunz's breach of fiduciary duty. The latter issue was answered in the amount of $3,187.50. As the Plaintiff testified, when the permanent loan commitment was lost, the partnership forfeited the loan commitment fee. One half of such sum was more than $3,187.50. The evidence was sufficient to justify the submission of these issues.

The jury found in answer to Special Issue No. 9 that the Plaintiff would suffer irreparable harm if the Defendants were allowed to foreclose upon the partnership property. The Court defined irreparable harm as " * * * injury of such a nature that the injured party cannot adequately be compensated therefor in damages, or the damages which may result therefrom cannot be measured by definite, certain or usable pecuniary standard." The Court followed the definition set forth in *Gulf Oil Corporation v. Walton,* 317 S.W.2d 260 (Tex.Civ.App.— El Paso 1958, no writ). In addition to the loss of his partnership property, if the Defendants had been allowed to foreclose, the damage done to the Plaintiff's reputation would be such that it would quite probably affect his future business dealings, and the Plaintiff so testified. The no evidence point as to Special Issue No. 9 is likewise overruled. Having considered the evidence, the Defendants' points 7, 10, 13, 16, 19, 22, 24, 26, 29 and 31 are overruled.

By Point No. 33, the Defendants assert that the trial Court erred in submitting Special Issue No. 9 to the jury because as submitted, it was not an ultimate issue, and the affirmative answer to the jury thereto could not form the basis of any judgment against either Kunz or Kunz Construction Company, Inc. The point is overruled.

The Defendants contend that the trial Court erred in submitting Special Issue No. 14, which required the jury to determine what the reasonable value of the labor and materials remaining unpaid was on the Bandera Road project. The Defendant corporation, in its cross-action, filed suit to collect this remaining unpaid balance, and the issue was over that sum. At one time, the Defendants had received a payment from the partnership account of $45,000.00, which according to the Plaintiff had been drawn without his knowledge and in violation of the written partnership agreement, which prohibited expenditures in excess of $2,000.00 without the signature of both parties. Regardless, this payment and all others that had been paid were undisputed. Special Issue No. 14 submitted the real issue existing between the parties which was the amount due and owing the Defendant corporation. The Defendants' points that the ultimate issue was the reasonable value of all labor and materials furnished by the corporation to the partnership on the Bandera Road project, and which was in the form as submitted in the Defendants' requested Special Issue No. 1, are overruled.

By answer to Special Issue No. 15, the jury found that reasonable attorney's fees for the Defendants' attorney were $5,350.00 for prosecuting the claim of the corporation for labor and materials furnished on the Bandera Road project which remained unpaid. In the accounting, which the Court subsequently undertook pursuant to stipulation of the parties, this item to the corporation was disallowed. Complaint to this action is now made by the Defendants who argue that error was committed as the finding was disregarded without motion and notice, as required by Rule 301, Tex.R. Civ.P. In this case, the issue became immaterial, and a recovery of attorney's fees by the Defendants would have been erroneous. The jury's answers to the issues could have been disregarded as immaterial on the Court's own motion without the required procedure under Rule 301. *Ridout v. Mobile Housing, Inc.,* 497 S.W.2d 66 (Tex.Civ. App.—Austin 1973, writ ref'd n. r. e.). In addition, we have failed to discover where the Defendants preserved any asserted error in their motion for new trial to any improper procedure. Finally, the immateriality of the attorney's fees was established from the Defendant's attorney who testified that his fees were for services rendered in defending the suit, in attempting to foreclose the $125,000.00 partnership note, in attempting to foreclose the involuntary lien filed by the Defendant against the partnership, and in attempting to collect the $54,-841.16 construction bill submitted to the partnership by the Defendants. Each of these actions, on which the attorney had undertaken to represent the Defendants, was found by the jury to be a breach of the fiduciary duty owed to the Plaintiff, and in addition, the jury found that such acts constituted a fraud upon the Plaintiff's rights. To have allowed the recovery of an attorney's fee would have benefited the defaulting party, and would have allowed an advantage contrary to the statutory intent of the high fidelity owed by the partner to the other. Art. 6132b, Sec. 21, Tex.Rev.Civ. Stat.Ann. Recovery of the attorney's fee under these circumstances would have been inequitable and was properly disallowed.

*Petty v. Hunter,* 254 S.W.2d 543 (Tex.Civ. App.—Waco 1953, writ ref'd n. r. e.). Besides these reasons, no attempt was ever made to prove the reasonable value of the services for the collection of only the asserted $54,841.16 construction bill. Art. 2226, Tex.Rev.Civ.Stat.Ann. The point complaining of the refusal to allow the item of $5,350.00 for reasonable attorney's fees is overruled.

The parties stipulated that the trial Court, on matters not submitted to the jury, would make the final determination as to the total value of the partnership assets and liabilities, and would then proceed to adjust the accounts. After the jury trial, two hearings were held on the assets and liabilities and their respective values, and the judgment the Court rendered reflects a complete accounting and these Court determined values and liabilities. One item which the Court considered was an attorney's fee of $12,000.00 incurred by the Plaintiff, and this was allowed in the judgment as a partnership liability. The Court, evidently, was proceeding under Art. 6132b, Sec. 18(1)(b), Tex.Rev.Civ.Stat.Ann., which provides that:

"The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property."

Kunz having breached his fiduciary duty and having committed a fraud upon the Plaintiff, the Plaintiff, as the wronged partner, was justified in incurring reasonable expenses for the preservation of the partnership business and property, and one item would have been reasonable attorney's fees.

As to this allowance, the Defendants complain with justification as nowhere in the Plaintiff's pleadings or evidence before the jury was any mention made that any claim of this nature would be made by the Plaintiff. At the second dissolution hearing before the Court, which was some twenty-seven days after the jury had been discharged, the Plaintiff tendered and was

permitted to file a trial amendment, which for the first time advanced the claim that the Plaintiff was claiming attorney's fees against the partnership for protecting and preserving the partnership assets. Over the Defendants' objection, the amendment was permitted and the testimony as to attorney's fees was received at the hearing. In this, the Court committed error as the matter was entirely new and deprived the Defendants of a trial before the jury on that item. The stipulations of the parties, which were made at different times during the trial, were made in the light of the pleadings which were before the Court at the time the various stipulations were made, and in view of the new matter in the trial amendment, we fail to see where in any of the stipulations the Defendants ever agreed to waive their right to have the reasonableness of the attorney's fees determined by a jury and submitted to the Court. The trial Court erred in awarding the $12,000.00 claim of attorney's fees as a partnership debt.

The Defendants have advanced additional points of error. We have examined them all, have determined them to be without merit, and they are all overruled.

The judgment of the trial Court is modified to the extent only that in the final judgment, item (19) of the list of Kunz-Huddleston liabilities, which is the $12,-000.00 attorney's fees due Foster, Lewis, Langley, Gardner & Banack, is hereby deleted, and the same shall not be paid as a partnership liability. In all other respects, the judgment of the trial Court is affirmed.