02-09-449-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00449-CV

 

 


 
 
 Premier Trailer Leasing, Inc.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 GTR Rental L.L.C. f/k/a CitiCapital Trailer Rental,
 Inc.
 
 
  
 
 
 APPELLEE
 
 


 

 

------------

 

FROM THE 393rd
District Court OF Denton COUNTY

------------

MEMORANDUM
OPINION[1]

------------

I.  Introduction

Appellant
Premier Trailer Leasing, Inc. appeals the trial court’s turnover order.  In
four issues, Premier contends that the trial court erred by entering a turnover
order against it because it is a non-judgment debtor; that the turnover order
violates terms of Premier’s stockholders agreement; that the trial court erred
by issuing an order requiring Premier to disclose what it considers to be trade
secrets; and that the turnover order fails to set forth Premier’s duties
clearly and definitively.  We modify the turnover order and will affirm it as
modified.

In
July 2007, a South Carolina federal court granted judgment in favor of Appellee
GTR Rental, LLC f/k/a CitiCapital Trailer Rental, Inc. against John DalCanton. 
GTR domesticated the judgment in Denton County.  DalCanton owns one hundred
shares of common stock and one hundred shares of preferred stock in Premier. 
On November 17, 2009, the trial court reconsidered its prior turnover order dated
June 7, 2009, and entered a new turnover order requiring Premier to “pay or
distribute to GTR . . . all [c]ompany [d]istributions to which
DalCanton may be otherwise entitled.”  Premier now appeals the latest turnover
order.

II.  The Turnover Order Against Premier, a Non-Judgment Creditor

In
its first issue, Premier contends that the trial court erred by entering the
new turnover order against it on the judgment against DalCanton.  Specifically,
Premier contends that because it is a non-judgment debtor, it “should have
never been subjected to a turnover order.”

We
review turnover orders under an abuse of discretion.  Burns v. Miller,
Hiersche, Martens & Hayward, P.C., 948 S.W.2d 317, 321 (Tex.
App.—Dallas 1997, writ denied).  We reverse only if the trial court acted in an
unreasonable or arbitrary manner.  Beaumont Bank, N.A. v. Buller, 806
S.W.2d 223, 226 (Tex. 1991).

The turnover
statute is a purely procedural device by which creditors may reach a debtor’s nonexempt
assets that are otherwise difficult to attach or levy on by ordinary legal
process.  Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a) (Vernon 2008); Burns,
948 S.W.2d at 321.  Under the statute, a judgment creditor can apply to a court
for an injunction or other means to satisfy a judgment through a judgment
debtor’s property, including present or future property rights.  Tex.
Civ. Prac. & Rem. Code Ann. § 31.002(a).

Property
may be subject to a turnover order if the judgment debtor owns the property;
the property is property a creditor cannot readily attach or levy on by
ordinary legal process; and the property is not exempt from attachment,
execution, or seizure for the satisfaction of the liabilities.  Id.  And
as this court has previously held, when a third party holds property subject to
a debtor’s possession or control, the trial court may issue and enforce a
turnover order against the third party.  Dale v. Fin. Am. Corp., 929
S.W.2d 495, 498 (Tex. App.—Fort Worth 1996, writ denied).

Here,
DalCanton, as a shareholder of Premier, possesses future rights to
distributions through his stock ownership.  GTR is utilizing the turnover
statute to pursue these future distributions intended for DalCanton.  And
neither party disputes that Premier is a non-judgment creditor.  The turnover
statute specifically allows that it may be utilized to reach “present or future
rights” to property.  Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a). 
Furthermore, this court has held that a trial court may issue and enforce a
turnover order against a third party when that party holds property subject to
the debtor’s possession or control.  Dale, 929 S.W.2d at 498.  We
conclude and hold that the trial court did not abuse its discretion by entering
a turnover order against Premier, a non-judgment creditor, requiring that if it
is to make distributions to DalCanton based on his ownership of Premier stock,
Premier must turn over these amounts to GTR.  We overrule Premier’s first
issue.

III.  Paragraph Six
of the Turnover Order

In
its fourth issue, Premier contends that the turnover order lacks the requisite
clarity and definiteness required of a turnover order, which, as Premier points
out, acts as a mandatory injunction.

A turnover order does act as a mandatory injunction.  Schultz v. Fifth Judicial Dist. Ct. of
Appeals at Dallas, 810 S.W.2d 738, 740 (Tex. 1991), (holding turnover order in nature of mandatory injunction is immediately
appealable), abrogated on other grounds by In re Sheshtawy, 154 S.W.3d
114 (Tex. 2004); Int’l Paper Co. v. Garza, 872 S.W.2d 18, 19 (Tex.
App.—Corpus Christi 1994, orig. proceeding) (turnover order acts as a mandatory
injunction against the judgment debtor and, if there are such parties, against
the receiver and any third parties interested in the property rights being
adjudicated).  To this end, orders granting injunctions
must be specific and describe in reasonable detail the act sought to be
restrained.  See Tex. R. Civ. P. 683.  That is, there can be no doubt
about the conduct required to comply with the order, nor can there be any doubt
about the conduct that would be a failure to comply with the order.  See
Vaughn v. Drennon, 202 S.W.3d 308, 316 (Tex. App.—Tyler 2006, no pet.)
(holding that an injunction must be definite,
clear, and concise, leaving the person enjoined
in no doubt about his duties,
without calling on him for inferences
or conclusions about which persons
might differ) (citing Gulf Oil Corp. v. Walton, 317 S.W.2d 260, 264
(Tex. Civ. App.—El Paso 1958, no writ)).

In
this case, paragraph six of the turnover order states:

In order that GTR may
ascertain whether DalCanton and, by virtue of this Order, GTR may be entitled
to a distribution from [Premier], [Premier] shall provide to GTR all notices
related to [Premier] distributions and any financial information, to which
DalCanton is entitled as a stockholder of [Premier] in the same fashion as
DalCanton is entitled (except that GTR is not entitled to marketing materials,
price lists, customer lists, customer identities, and product identities and
availabilities); provided, further, that all such information and notices shall
remain subject to the Confidentiality Order.

 

Premier’s
argument is that the language of “any financial information” until the end of
paragraph six lacks clarity and definiteness as to what its duties are under
this provision of the order.  Premier claims that the trial court itself,
during the turnover order hearing and in its findings of facts and conclusions
of law, demonstrated the ambiguous nature of this provision.  At the hearing,
the trial court commented that “[i]t is the intent that [GTR] get financial
information of a general nature, such as you would disclose to your auditors . . .
Or not disclose to your auditors, they may get confidential information, such
as the financial statements the auditors would get . . . [l]ike you
would disclose to your bank.  Let’s give it that idea.”  The trial court found
as a matter of law that “Confidential trade secret information is not subject
to discovery by GTR but financial statements given to third party lenders such
as Bank of America is discoverable.”  What if Premier turns over financial
information to a bank that is also confidential information?  The complained of
provision in paragraph six of the turnover order does not clearly dictate what
Premier is to do in that instance.

Additionally,
we conclude that the provision further lacks clarity in the qualifying nature
that is also built into the provision.  The provision states that Premier is to
turn over “any financial information,” but qualifies that this information is
not to include “marketing materials, price lists, customer lists, customer
identities, and product identities and availabilities.”  Premier could infer
from this provision that it is not required to hand over any financial
documents that it deems similar to “marketing materials, price lists, customer
lists, customer identities, and product identities and availabilities” because
only these five enumerated exceptions to “any financial information” are listed
in the order.  Or, because the provision does not clearly dictate otherwise,
Premier might conclude that it is required to provide to GTR any
financial information—no matter how similar to “marketing materials, price
lists, customer lists, customer identities, and product identities and
availabilities” it might be—even if it is something that it might only provide
to auditors but not a lending institution or that it might consider
confidential financial information.  This is the exact lack of clarity that a
turnover order cannot contain.  In short, this language leaves doubt about the
conduct required by Premier to comply with the order, and it further leaves
doubt about the conduct that would be a failure by Premier to comply with the
order.  We conclude that this language is not definite, clear, and concise, and
that it leaves Premier with doubt about its duties and calls on Premier to make
inferences or conclusions about which persons might differ.  Gulf Oil Corp.,
317 S.W.2d at 264.  Thus, we hold that the trial court erred by including the
language

“and any financial
information, to which DalCanton is entitled as a stockholder of [Premier] in
the same fashion as DalCanton is entitled (except that GTR is not entitled to
marketing materials, price lists, customer lists, customer identities, and
product identities and availabilities); provided, further, that all such
information and notices shall remain subject to the Confidentiality Order.”

 

We
sustain Premier’s fourth issue and modify paragraph six of the turnover order
entitled “Order On Motion for Reconsideration” to read only “In order that GTR
may ascertain whether DalCanton and, by virtue of this Order, GTR may be
entitled to a distribution from the Company, the Company shall provide to GTR
all notices related to Company distributions.”  See Tex.
R. App. P. 43.2(b) (“The court of appeals may . . . modify the trial court’s judgment and affirm
it as modified.”)

IV. 
Conclusion

Having overruled Premier’s first issue and
sustained its fourth issue, we need not address Premier’s second and third
issues because they are predicated on the language we have removed from the
turnover order.  We modify paragraph six of the turnover order entitled “Order
on Modification for Reconsideration” to read only “In order that GTR may
ascertain whether DalCanton and, by virtue of this Order, GTR may be entitled
to a distribution from the Company, the Company shall provide to GTR all
notices related to Company distributions.”  We affirm the trial court’s
judgment as modified.

 

 

 

BILL MEIER
JUSTICE

 

PANEL:  WALKER, MCCOY, and MEIER, JJ.

 

DELIVERED:  May 19, 2011









[1]See Tex. R. App. P. 47.4.